664 So.2d 177 (1995)
Charlie L. LEWIS
v.
Wayne GRIFFITH, Town of Hickory and Municipal Election Commission of the Town of Hickory.
No. 93-CA-01426-SCT.
Supreme Court of Mississippi.
September 21, 1995.
Rehearing Denied November 22, 1995.
*178 J. Daryl Byler, Meridian, Fenton B. DeWeese, Philadelphia, MS, for Appellant.
George S. Monroe, II, Newton, MS, for Appellee.
En Banc.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
On June 28, 1993, Charlie L. Lewis, a candidate for mayor of the Town of Hickory, Mississippi, timely filed a Petition for judicial review pursuant to § 23-15-951 of Mississippi Code Annotated in the Circuit Court of Newton County. The petition named Wayne Griffith, his opponent in the mayoral race, as the Contestee, and set forth the following three allegations: 1) a "spoiled ballot" had been incorrectly counted; 2) an absentee ballot was improperly denied to Ms. Rita Fielder; and 3) that these discrepancies were outcome determinative, such that the election was tainted.
On July 19, 1993, the Town of Hickory and the Municipal Election Commission, by and *179 through their legal counsel, George S. Monroe, intervened and requested that they also be named as defendants/contestees in the cause. Circuit Court Judge Marcus Gordon signed an agreed Order to this effect on July 27, 1993. A trial date of December 1, 1993, was thereafter agreed upon by all interested parties.
Griffith and the Town of Hickory (hereinafter "Contestees") filed their answer on September 16, 1993, which answered all allegations raised by Lewis.
After seeking and obtaining leave of the court, Lewis amended his petition, alleging that during the course of the mayoral election, three absentee ballot applications were improperly handled in violation of Miss. Code Ann. §§ 23-15-715 to -755 (1990).
Thereafter, on November 19, 1993, Contestees filed their amended answer, denying the additional allegations. In addition, Contestees moved to strike paragraph V of Contestant's amended Petition and requested that the court grant partial summary judgment in their favor. On November 29, 1993, Judge Gordon granted partial summary judgment, causing paragraph V of Lewis' amended Petition to be stricken. As such, the issue of the Town Clerk's handling of the absentee ballots did not go forward for trial.
The trial proceeded on December 1, 1993, with all parties present. After hearing all the evidence and witnesses' testimony, Judge Gordon sustained Contestee's motion for directed verdict to dismiss paragraphs III and IV of Lewis' Petition.[1] Therefore, the only issue presented for jury consideration was the one pertaining to the handling and counting of the alleged "spoiled ballot." The jury returned a verdict in favor of Wayne Griffith.
Aggrieved by both the actions on the part of Judge Gordon and by the jury verdict, Charlie L. Lewis [hereinafter Contestant] prosecutes this appeal and assigns the following errors:
I. WHETHER THE HICKORY TOWN CLERK'S HAND-DELIVERY OF THREE ABSENTEE BALLOTS TO HER ABLE-BODIED RELATIVES IN THEIR HOME AFTER THE TOWN HALL WAS CLOSED FOR THE WEEKEND, AND HER SUBSEQUENT RETURN OF THOSE BALLOTS TO TOWN HALL AFTER THE DEADLINE FOR RECEIVING ABSENTEE BALLOTS FROM VOTERS WHO APPEAR IN PERSON, VIOLATES THE ABSENTEE VOTER LAWS OF MISSISSIPPI, THUS VOIDING THOSE THREE BALLOTS FOR PURPOSES OF THE HICKORY MUNICIPAL ELECTION HELD JUNE 8, 1993?
II. WHETHER THE HICKORY TOWN CLERK'S HAND-DELIVERY OF THREE ABSENTEE BALLOTS TO HER ABLE-BODIED RELATIVES IN THEIR HOME AFTER THE TOWN HALL WAS CLOSED FOR THE WEEKEND, AND HER SUBSEQUENT RETURN OF THOSE BALLOTS TO TOWN HALL AFTER THE DEADLINE FOR RECEIVING ABSENTEE BALLOTS FROM VOTERS WHO APPEAR IN PERSON, VIOLATES PUBLIC POLICY AND STANDARDS OF FAIRNESS AND CREATES A SPECIAL CLASS OF VOTERS, THUS VOIDING THOSE THREE BALLOTS FOR PURPOSES OF THE HICKORY MUNICIPAL ELECTION HELD JUNE 8, 1993?
III. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING CONTESTEE'S MOTION FOR SUMMARY JUDGMENT AS TO PARAGRAPH V OF CONTESTANT'S AMENDED COMPLAINT?

IV. WHETHER THE TRIAL COURT ERRED IN GRANTING CONTESTEE'S MOTION TO DISMISS PARAGRAPHS III AND IV OF CONTESTANT'S AMENDED COMPLAINT AFTER HEARING TESTIMONY *180 OF HOW RITA FIELDER WOULD HAVE VOTED?

At the outset, we note that the trial court first adjudged each of the four issues presented to be questions of law, and not proper for jury resolution. As will be set out in the discussion that follows, we do not disagree with this aspect of the case. The only issue that was proper for jury resolution was the allegation concerning the "spoiled ballots" and it was indeed presented to the jury. The remaining allegations concerning the Town Clerk's handling of the absentee ballots was a question of law that was not proper for the jury. The trial court correctly assumed control over these issues. However, upon closer scrutiny, we find that the trial court incorrectly applied the relevant statutes pertaining to absentee ballots.

STATEMENT OF THE FACTS
A municipal election was held in the Town of Hickory on June 8, 1993. Charlie Lewis and Wayne Griffith were the two candidates running for the office of mayor of Hickory. The Municipal Election Commission certified the results of said election on June 8th, finding and declaring Griffith the winner of the race, with a total of 116 votes, to Lewis' 115 votes.
The Petition, thereafter filed by Contestant, alleged the following violations of the provisions governing municipal elections:
1) Contestant inquired about absentee ballots on June 1, 1993 and was informed that they were not yet available, in violation of Miss. Code Ann. § 23-15-649.
2) Contestant requested that his sister, Ms. Rita Fielder (who was hospitalized at that time) be sent an application for an absentee ballot, but that while four members of the Caucasian race received such ballots, Ms. Fielder did not.
** In his amended petition, Contestant further alleged that three of the four other absentee ballots were invalid because the town clerk, Marie Childress, improperly delivered them by personally delivering the ballots to the respective homes and bringing them back to city hall and that the three ballots were cast by relatives of Childress.
3) That on the day of the election (June 8th), a "spoiled ballot" was thrown out due to irregular markings, but the same ballot was thereafter counted in favor of Contestee the next day (June 9th).
4) The election commission, in spite of these irregularities, certified the vote as 116 to 115, in favor of Contestee.
5) Had Fielder been permitted to vote and the "spoiled ballot" not counted, the results and outcome of the election would likely have been different.
The petition prayed for permitting Ms. Rita Fielder's vote to be counted, discounting an alleged "spoiled ballot," or alternatively, that a new election be ordered.
The answer, filed by Contestee and the Town of Hickory, denied all violations asserted by Contestant, stating in part as follows:
1) That Contestant inquired about the absentee ballots on or about May 24, 1993, rather than June 1, 1993. The ballots were not ready at the time Contestant inquired and that there was no violation of § 23-15-649, at the time the ballots were requested.
2) That Contestant requested an absentee ballot for Ms. Rita Fielder on June 1 or 2, 1993, and was advised that such ballot would be sent to Fielder.
3) That Fielder was mailed an absentee ballot to her resident address shown by the land records of the Town of Hickory, but said ballot was never returned to the City Clerk or Assistant City Clerk. Further, no official for the Town of Hickory was notified that Fielder did not receive her absentee ballot until after the election. Finally, it was admitted that four other absentee ballots were sent to members of the Caucasian race who requested them.
In the amended answer, Contestee and the Town of Hickory admitted that three of the four absentee ballots in question were personally delivered by the city clerk Childress, only after each voter had executed an application for the absentee in the presence of the municipal clerk. They further admitted that the ballots were executed in secret and returned *181 in a sealed envelope, with the requisite affidavit to the clerk, in accord with § 23-15-17. It was also admitted that the three ballots were executed by relatives of the clerk, but that all statutory requirements for executing these ballots had been duly complied with.
4) The ballot in question was not counted on the day of the election. However, the ballot was later counted by the election commission, after the attorney for the Town of Hickory recommended that it be counted as the markings could "reasonably be determined."
On November 19, 1993, Contestee and the Town of Hickory moved for partial summary judgment. The motion averred that Contestant's allegations were not supported by the election provisions set forth in the Mississippi Code, and that the election code permitted Childress, as the Town Clerk, to deliver the absentee ballots to three of her relatives. A hearing on the motion for partial summary judgment was had on November 29, 1993. Mrs. Marie Childress testified that she, as the Clerk for the Town of Hickory, delivered applications and absentee ballots to three of her relatives the Friday before the upcoming election on Tuesday. The three relatives of the town clerk included her son, daughter-in-law and granddaughter. Childress' son and his wife were living in Tunica, allegedly did not have a mailing address and, therefore, came home to vote. Similarly, Childress' granddaughter was attending Mississippi State University, did not have a mailing address, and came home to vote. Childress took the applications and ballots home with her from the Town Hall, and according to Contestee, the three family members executed their votes and Childress "did exactly what she would have done in City Hall." The Contestees argued that had Childress done this via the mail, the same result would have occurred because all three absentee applications and ballots would have gone to her post office box, because the three family members received their mail at Childress' post office box in Hickory.
The Contestees further argued that §§ 23-15-715, 23-15-719 and 23-15-627 of the Miss. Code Ann. did not prohibit Childress from personally delivering absentee ballots to a location outside the Town Hall in order to vote such ballots. The Contestees relied on Riley v. Clayton, 441 So.2d 1322 (Miss. 1983), as controlling authority, wherein this Court interpreted Miss. Code Ann. § 23-15-631, the election code section pertaining to executing absentee ballots. In part, this Court held that "in the absence of any allegations or proof of fraud or tampering, that the personal delivery of absentee ballots by the Registrar or her deputy to physically incapacitated voters does not void these ballots." Id. at 1328.
During the hearing on the motion for summary judgment, Contestant argued that the Riley decision carved out an exception for disabled voters and, therefore, was not applicable as the Hickory Mayoral election involved the execution of absentee ballots by three able-bodied voters. Contestant further alleged that allowing the Riley exception to extend to the able-bodied voters in the Hickory election served to create a special class of voters. Contestant also argued that the actions by Childress, in delivering ballots to her relatives at her home, served to give voters the opportunity to vote outside the normal office hours of the Town Hall. Contestant argued, "Our position would be if this practice of home delivery of ballots was intended to be allowed, then the law should expressly allow it."
In short, both parties agreed that Childress complied with her duties as the Town Clerk. The disputed issue was the fact that such duties were performed outside rather than inside the Town Hall. The lower court held in part that:
[A] Clerk is a Clerk, regardless of where she is at. She has duties as a Clerk while she is at home, as well as the office. That when she leaves the City Hall, she does not shed herself of the cloak of responsibility ... That she can administer the duties of a Clerk at home, as well as she could at the City Hall.
* * * * * *
This appears to be a City Clerk performing her duties, only regarding members of her family. I dare say, and I dare *182 suspect, this issue would not be an issue if it had been someone other than her family.
The lower court by Order dated November 29, 1993, granted Contestees' motion for partial summary judgment, therefore the only issues that went forward to trial were: 1) the issue pertaining to an alleged "spoiled ballot" counted in favor of Griffith; and 2) the issue pertaining to the handling of Rita Fielder's absentee ballot.
At the trial held on December 1, 1993, the following evidence and testimony was adduced. The testimony of the pertinent witnesses is summarized herein.
Ben Fielder, a member of the Board of Alderman for the Town of Hickory, testified that he served as Charlie Lewis' campaign manager for the mayoral election. Fielder stated that on June 2, 1993, he went to City Hall, spoke to the Clerk, Mrs. Childress, and requested that his sister, Rita Fielder, be sent an absentee ballot as she was in the hospital in Meridian with a broken hip. According to Fielder, Childress stated that she was expecting the absentee ballots to be delivered that afternoon and that she would mail Rita Fielder a ballot. Fielder also stated that he checked Rita's mail box several times that week and never found the ballot.[2] On the morning of the election, Fielder went early to vote and at that time learned that his sister's absentee ballot had not been received in the clerk's office. According to Fielder, Childress informed him that she had personally mailed the ballot. Fielder testified that he never saw the requested absentee ballot so that he assumed that it had never been mailed. He also admitted that both Mrs. Childress and the deputy clerk, Faith Magee, were honest and fair people who performed their jobs and duties efficiently.
In addition, Fielder testified that he was present in the Town Hall when all the ballots were being counted, that three ballots with various markings on them were placed aside during the count, and that the Election Commission later ruled the three to be "spoiled ballots." That night Fielder recalled the vote count as 115 to 114, in favor of Wayne Griffith. Fielder was also aware of the existence of two affidavit ballots that had yet to be counted, and stated that the next day, one of these ballots was counted in favor of Mr. Lewis, so that the election was at that point tied at 115 to 115. Finally, Fielder testified that a Mrs. White stated that she had received advice pertaining to the three alleged "spoiled ballots" and one was to be counted. This ballot was determined to be in favor of Griffith and, as such, made Griffith the winner with 116 votes to Lewis' 115.
Rita Fielder next testified that she was in the hospital at the time of the election, which prevented her from voting at the polls. She also stated that she was aware that her brother had requested an application for her absentee ballot, and that she never received it, but that she would have cast her vote for "Mr. Charlie" had she been in possession of her absentee ballot.
Stevie Fielder was also present when the votes were counted at the Town Hall the night of the election. Stevie testified that he was close enough to see the ballots and hear all votes being tallied and that he noticed that three ballots were set aside during the count. Stevie recalled hearing Mrs. White state that the three ballots would not be counted in the tally.
Rosie Lewis was yet another person present during the vote count on election day and stated that she also was able to see and hear this procedure. Lewis testified that she was under the impression that when the commissioners placed certain ballots to the side, that those particular ballots would be thrown out and at no time were to be counted in the final tally.
Kenneth Henley testified that he was present for about 70% of the time the votes were being counted and also recalled that certain ballots were set aside as "spoiled ballots." Henley understood that the city attorney, George Monroe, would be contacted with regard to the three ballots set aside.
Finally, the Contestant testified that he initially contacted the Clerk on May 24, 1993, *183 about whether the absentee ballots had been received by that office. Childress informed him that they had not yet been received but that they were due in that afternoon or the next day. Contestant never returned to check the status of the ballots.
Contestant was present at Town Hall at the end of the vote count and was also aware that five of the ballots cast in the election were at issue. The ballots not counted the night of the election included: one ballot with no marking, two ballots with various markings, and two affidavit ballots. Contestant agreed that one of the three alleged spoiled ballots was counted the next day after the commissioners and clerk requested advice from the city attorney on how to proceed. According to Contestant, one of the affidavit ballots (cast in his favor) was later allowed to be counted. Further, Contestant agreed that the second affidavit ballot cast in favor of Griffith was thrown out and not counted because the voter failed to establish a local residence.
Marie Childress testified that as city clerk, she handled absentee ballots for the elections in the Town of Hickory. Childress recalled that Contestant first inquired about the absentee ballots on May 24, 1993, and at that time, her office had yet to receive the ballots for the June 8th election. Childress stated that they received the ballots on May 25th, the Wednesday before the election on Tuesday. Childress also recalled that Ben Fielder came to the Town Hall on June 2, six days before the election in order to request that his sister, Rita Fielder be sent an absentee ballot. She also stated that she informed him that the ballot would be sent. Childress testified that Rita Fielder's listed address on the land records was Post Office Box 135 in Hickory.[3] She also stated that she did not personally mail the ballot, and that Faith Magee mailed it after calling her at home Thursday to check on Rita Fielder's address. Finally, Childress stated that Ben Fielder never notified her that Rita Fielder had not received her application for an absentee ballot nor actual ballot and that had he done so, she would have gone to the Town Hall (on Saturday) in order to get the forms for Rita Fielder's absentee ballot. Childress agreed that the deadline for applying for an absentee ballot was 5:00 p.m. on Saturday before the election Tuesday, and the deadline for returning an actual absentee ballot was Monday at 5:00 p.m. According to Childress, she first learned that Rita Fielder had not received her absentee forms the day of the election but that the law prevented her from mailing or executing absentee ballots the day of the election.
Faith Magee, deputy clerk for the Town of Hickory, testified that she recalled Ben Fielder coming to the Town Hall to request that his sister be mailed an absentee form but that he never directed where to send the voting forms. Magee testified that she first conferred with Mrs. Childress and then mailed out the absentee ballot to Rita Fielder on June 3, 1993, to Post Office Box 135 in Hickory. Magee also first learned that Fielder had not received her ballot on June 8th. Magee stated that the clerk's office was extremely busy and that at her first opportunity, she mailed the absentee ballot out the next day, Thursday, June 3rd at 5:00 p.m.
Larry Costilow, postmaster for the Town of Hickory, testified that Post Office Box 76 was registered to Rita Fielder and that 2 to 3 different people sporadically would come to the post office in order to check and collect her mail. According to the postmaster, Rita Fielder also received mail at Post Office Box 135, a box registered in the name of Hattie Hundall and also checked by several different people. In addition, Costilow stated that in a town so small, it was not uncommon for people he knew to ask him to get mail without using a key to the post office box.
Sylvia White and Mary Moore, two of the three election commissioners, testified that they served as poll workers and as commissioners during the course of the June 8th municipal election. Both testified that they were in charge of counting and certifying the results. White stated that the ballots for the general election were ordered May 21st and that she picked up the ballots on May 25th. White also recalled that there were four absentee *184 ballots that had been processed for the election and that she had a note that a ballot for Rita Fielder had been mailed out but not received back. Both White and Moore testified that they closed the polls at 7:00 p.m., and Moore called out the ballots as they were pulled from the boxes. Frances Hosey, the third commissioner, viewed the ballots as Moore read them. Both also stated that three ballots were cast aside as creating some question but that at no time were they referred to as "spoiled ballots." In addition, White recalled that at the time the votes were being tallied, they had two affidavit ballots that needed verification and that they planned to have them verified the next day. White testified that the unofficial tally that night was 115 votes for Griffith and 114 for Lewis and that Lewis announced that night that he planned to contest the election.
White discussed the three questionable ballots, stating that the first one had no marks or notation on it for the candidate of mayor so it could not be counted. As to the second ballot, White stated that there was a marked line through Lewis' name and a mark for Griffith. While both White and Moore initially thought that this ballot could not be counted, as it appeared that there was no vote cast, they were advised by Monroe that they could count this ballot in favor of Griffith. Finally, the third ballot contained only a marked-out line/notation and was not counted by the decision of the commissioners. White stated again that all the ballots called into question were grouped together but she was not sure whether they were placed in an envelope and whether they were in an envelope marked "rejected." She did again affirmatively state that at no point that night were the five ballots in question marked "spoiled" or "rejected."
White also testified about the two affidavit ballots, stating that after verification, one was counted in favor of Lewis and the other was discarded because the woman voting the ballot did not have an application on file in the clerk's office.[4]
The jury found that the commissioners correctly ruled that the ballot in question was voted in favor of Griffith, agreed that Griffith received the greatest number of votes, and, therefore, should be declared the winner of the mayoral election. This appeal followed.

DISCUSSION OF THE LAW

I. WHETHER THE HICKORY TOWN CLERK'S HAND-DELIVERY OF THREE ABSENTEE BALLOTS TO HER ABLE-BODIED RELATIVES IN THEIR HOME AFTER THE TOWN HALL WAS CLOSED FOR THE WEEKEND, AND HER SUBSEQUENT RETURN OF THOSE BALLOTS TO TOWN HALL AFTER THE DEADLINE FOR RECEIVING ABSENTEE BALLOTS FROM VOTERS WHO APPEAR IN PERSON, VIOLATES THE ABSENTEE VOTER LAWS OF MISSISSIPPI, THUS VOIDING THOSE THREE BALLOTS FOR PURPOSES OF THE HICKORY MUNICIPAL ELECTION HELD JUNE 8, 1993?

II. WHETHER THE HICKORY TOWN CLERK'S HAND-DELIVERY OF THREE ABSENTEE BALLOTS TO HER ABLE-BODIED RELATIVES IN THEIR HOME AFTER THE TOWN HALL WAS CLOSED FOR THE WEEKEND, AND HER SUBSEQUENT RETURN OF THOSE BALLOTS TO TOWN HALL AFTER THE DEADLINE FOR RECEIVING ABSENTEE BALLOTS FROM VOTERS WHO APPEAR IN PERSON, VIOLATES PUBLIC POLICY AND STANDARDS OF FAIRNESS AND CREATES A SPECIAL CLASS OF VOTERS, THUS VOIDING THOSE THREE BALLOTS FOR PURPOSES OF THE HICKORY MUNICIPAL ELECTION HELD JUNE 8, 1993?
As Appellant's first two assignments of error question the validity of three absentee ballots executed by the clerk and concern the same statutory scheme, the following *185 analysis is dispositive of the first two issues raised.[5]
This Court requires strict compliance with the statutes concerning absentee ballots. Stringer v. Lucas, 608 So.2d 1351, 1361 (Miss. 1992). The statutes at issue in the present case can be summarized as follows. Under Mississippi's election statutes, a voter can obtain an absentee ballot in one of two ways: by appearing in person before the county registrar, or requesting a ballot by mail and mailing it back. See Miss. Code Ann. § 23-15-715(b) (Supp. 1992). An elector applying for an absentee ballot shall fill in the application form as provided in § 23-15-627. See Miss. Code Ann. § 23-15-717 (Supp. 1992). Section 23-15-627 provides for the form of the application for an absentee ballot which shall be furnished, by the registrar, to any elector authorized to receive an absentee ballot. Finally, Miss. Code Ann. XX-XX-XXX (1972) requires that an "elector shall appear in person before the City Clerk of the Municipality in which he resides and shall execute and file an application as provided in § 23-15-627."
If an elector is unable to appear personally for the specific reasons set forth in the statute (disability, temporarily residing outside the county, etc.), he or the parent, spouse or dependent who will be with the voter on election day, may mail the appropriate application to the registrar.
Miss. Code Ann. § 23-15-719 (1972) requires that the elector fill in his absentee ballot, place it in the provided envelope and seal the envelope, then subscribe and swear to an affidavit printed in the back of the envelope which states "this envelope contains the ballot marked by me." Section 23-15-635 of the Miss. Code Ann. (1972) provides the form for the certificate of attesting witnesses to be used in conjunction with absentee ballots when the county registrar is not an attesting witness to the vote. Section 23-15-631 of the Miss. Code Ann. (a) discusses the procedure whereby the county registrar serves as the attesting witness and states in part "[a]ll absentee voters ... who mark their ballots in the county of the residence shall use the registrar of that county as the witness."
Viewing the statutory scheme, it is evident that these sections requiring that a voter request an absentee ballot, actually vote his own ballot, and place and seal the ballot in the provided envelope are intended to ensure the integrity of absentee ballots.
In the present case the actions of the clerk in personally delivering three absentee ballots to three of her relatives are called into question. While this Court cannot point to specific acts of fraud or specific wrongdoing, we can point to this unusual service by the clerk for her son and daughter-in-law and granddaughter. This service is questionable as it does not adhere to the specific language of the applicable statute. We also can point to the fact that this unusual service granted to the clerk's relatives created a situation whereby the ballots were actually delivered and marked outside of the clerk's office, which if approved, would in this case and in future election cases leave the possibility of fraud, deception and misuse of the clerk's position of public trust. Fraud, deception, and misuse are absent in this case but so is strict adherence to the applicable statute. The record before this Court and the factual occurrences undermine confidence in the election and call into question the ballots here counted and the results of the election. The actions of the clerk and the resulting ballots that determined the outcome of this election certainly do not guarantee or insure integrity of absentee ballots, and these actions do not follow the specifics of the law. A faithful following of the statute would inspire integrity. The services rendered to the clerk's family members insofar as the record reflects, were not available to other members of the public and were available to the voters here affected only because of their family relationship with the clerk. Because the services *186 rendered are outside of statutory permission, this Court cannot approve these actions. The actions of the clerk were irregular and not in accordance with any statute. We do acknowledge the judicially created exception set forth in Riley v. Clayton, 441 So.2d 1322, 1328 (Miss. 1983). Therein, we held that absent allegations of fraud and/or misconduct, absentee ballots could be delivered by the clerk outside the Town Hall in order for physically incapacitated individuals to execute them. However, this holding should not be carried further than the specific facts of the Riley case as it was a judicial allowance or deviation from the statute. This may well have been bad law made for a good purpose. Notwithstanding this Court's holding in Riley v. Clayton, we find that the clerk's actions in the present case were improper. Other than declarations by the clerk, there is not a record of the occurrences involved in these ballots and certainly there is not a record that complies with the statute of how these ballots were delivered, executed and recorded. The statute creates specific and necessary requirements that must be followed, in order for absentee ballots to count. We do further hold that a clerk in performing statutory duties must perform those duties in strict compliance with the statutes. The facts of this case underscore this requirement, especially when dealing with the clerk's own family and in circumstances private to the clerk and her kin. Given the facts, the need for strict adherence to the law is readily apparent.
The record reflects that certain requirements were indeed complied with by the clerk. However, problems arise in the fact that the clerk delivered the three ballots to her relatives after normal business hours and that the ballots were executed outside the Town Hall. Again, it is permissible for absentee ballots to be executed in one of two ways: (1) by appearing in person before the clerk and executing an application and ballot, or (2) by requesting that an application and ballot be sent by mail. These requirements have not been met in the present case. These statutory provisions must be followed and nothing within them permits a clerk to personally deliver and execute absentees to able-bodied persons outside the Town Hall.
In determining which votes are illegal or invalid, the general rule is that a violation of voting procedures which amounts to "such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified voters impossible to ascertain" renders the tainted votes void. Riley v. Clayton, 441 So.2d 1322, 1328 (Miss. 1983). Certainly, there was a complete and total departure from statutory procedures that destroyed ballot and election integrity. We simply point out the time and manner in which the three ballots were executed and note that there was not strict compliance with the statute pertaining to absentee ballots.
Moreover, in analyzing whether or not these election code provisions are deemed mandatory or directory, we find that the language contained in Miss. Code Ann. § 23-15-715 which sets forth the manner for applying and executing absentee ballots is mandatory. The statute must be followed to protect the use, distribution and tallying of absentee ballots. If a statute does not expressly declare that a particular act is essential to the election's validity or that omission of the particular act will render the election void, the statute is considered directory rather than mandatory, so long as the irregular act is not intended to affect the integrity of the election. Riley, 441 So.2d 1322, 1326 (Miss. 1983). The acts of the clerk in handling the ballots in the present case does nothing to strengthen the integrity of the election or to cause an elector to repose confidence in the election outcome. If the violated statute is directory rather than mandatory and there is no allegation or proof of fraud, the non-complying ballots are valid and properly counted. Riley, 441 So.2d at 1328. Votes not in compliance with mandatory provisions of election statutes are illegal; votes illegally cast are improperly counted. Hatcher v. Fleeman, 617 So.2d 634, 640-641 (Miss. 1993). The legislature in setting the strict requirements of Miss. Code Ann. § 23-15-715 intended to protect the absentee ballots from abuse and misuse. When the statute is followed, ballot integrity is more likely *187 to occur. In conclusion, we find that the actions taken on the part of the Town Clerk were not in compliance with the statutes. The trial court ruled in part that "a clerk is a clerk, regardless of where she is at" and that "when she leaves City Hall, she does not shed herself of the cloak of responsibility." With this, we cannot completely agree. A clerk does indeed take the oath of responsibility; however, a clerk must always serve and perform within the confines of statutory law. Because the clerk in the present case performed her duties, in part, while the Town Hall was officially closed and because other similarly situated voters could have been denied the opportunity to vote an absentee ballot in a similar fashion and because the acts of the clerk do not lend strength to the integrity of the ballot nor cause an elector to have confidence in the outcome of the election and because the clerk had no statutory authority to perform in the way that she did, we cannot state that such action was permitted by law. Again, a voter can obtain an absentee ballot in one of two ways: first, by appearing in person before the county registrar (in this instance the town registrar) or second, requesting a ballot by mail and mailing it back. Insofar as we differ in this case with Riley v. Clayton, suffice it to say that the decision in Riley was an aberration of the application of the statute for a good purpose, but it is not persuasive as precedent. Therefore, wherein Riley deviates from the statute it is overruled.
Based on the foregoing, we reverse and render on this issue, such that the three subject ballots are not to be counted in certifying the election results of June 8, 1993. Further discussion of the summary judgment issue follows.

III. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING CONTESTEE'S MOTION FOR SUMMARY JUDGMENT AS TO PARAGRAPH V OF CONTESTANT'S AMENDED COMPLAINT?

Standard of Review for Summary Judgment
We employ a de novo standard of review in reviewing a lower court's grant of a summary judgment motion. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988).
This Court conducts a de novo review of orders granting or denying summary judgment and looks at all
the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt. [citations omitted].
Mantachie Natural Gas District v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992).
Contestant alleges that the trial court erred in removing from the jury the issue pertaining to the Town Clerk's hand-delivery of the three absentee ballots to her able-bodied relatives. Contestant further argues that such action violates § 23-15-951 of Mississippi Code Annotated, which calls for election contest issues to be tried before a jury.
Contestees submit that the trial court was proper in sustaining the motion as the statutes only require persons voting absentee to appear personally before the Town Clerk and do not require an appearance within the Town Hall.
This Court does recognize summary judgment as an appropriate procedural device capable of being utilized in election disputes. See Wilbourn v. Hobson, 608 So.2d 1187 (Miss. 1992) (Court affirmed summary judgment granted in favor of Contestant); Stringer v. Lucas, 608 So.2d 1351, 1358 *188 (Miss. 1992) (this Court held summary judgment was proper ... Section 23-15-951 provides circuit court with authority to impanel jury to determine who received greatest number of legal votes at election).
The foregoing, together with the discussion set forth in issues I and II illustrate that the trial court was correct in adjudging these issues as questions of law, not of fact. While we do find the trial court erroneously applied the law regarding securing absentee ballots, we hold that the trial court was correct in its decision to rule on the matter as a question of law and not submit it to the jury. This is of little consequence to the Contestant as we accepted the substantive legal argument contained in Issue I.
Therefore, the summary judgment of the court below is hereby reversed and rendered, with directions for the Election Commission to discard the three absentee ballots at issue.

IV. WHETHER THE TRIAL COURT ERRED IN GRANTING CONTESTEE'S MOTION TO DISMISS PARAGRAPHS III AND IV OF CONTESTANT'S AMENDED COMPLAINT AFTER HEARING TESTIMONY OF HOW RITA FIELDER WOULD HAVE VOTED?
Contestant next complains of the trial court's actions in refusing to allow the jury to hear and consider the issue pertaining to Rita Fielder's absentee ballot and argues again that these issues were required to be heard and decided by a jury. Once more this Court's decision in Stringer v. Lucas, 608 So.2d 1351 (Miss. 1992), is relevant. In addressing the issue of whether the trial court erred in granting a partial directed verdict, this Court concluded that "a motion for directed verdict was inappropriate in the face of a wealth of statutory election violations." Id. at 1361.
Pursuant to this holding, directed verdicts in election contest cases are permissible so that a jury is not required to hear and decide certain issues. Further, while Miss. Code Ann. § 23-15-951 permits a jury to be impaneled to decide issues in an election contest, it does not appear to mandate a full trial of all issues before a jury. Stringer v. Lucas, 608 So.2d at 1358.
Because the matter arrives at this Court as a result of a directed verdict granted in favor of the Contestees, the following standard of review should be observed:
The Circuit Court  and this Court on appeal  are required to consider the evidence in the light most favorable to the plaintiffs ... giving those plaintiffs the benefit of all favorable inferences that may reasonably be drawn from the evidence. Unless the evidence is so lacking that no reasonable jury could find for the plaintiffs, the motion must be denied.
Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990).
Once more, it is necessary to inquire whether this ruling was proper in the present case. Prior to instructing the jury with the applicable law, Contestees renewed their earlier motion to strike paragraphs III and IV of Contestant's complaint. The lower court was keenly aware of the difficulties presented by this case. First, the lower court was unsure of how to handle Fielder's absentee ballot because as Mr. Monroe stated, "how can you count a vote that was never voted?" Second, the lower court was not aware of any controlling authority on how to handle counting a vote which was allegedly cast by an absentee voter where the absentee ballot was never received. Realizing the unique circumstances, the lower court granted Contestees' motion to dismiss the paragraphs pertaining to Rita Fielder's absentee ballot not being voted, such that the jury was not permitted to consider this issue. This ruling stated in part:
My fundamental philosophy is the vote should be counted, because it is obvious to me who she would have voted for, and she had the right to vote; but, I'm not going to go that far, because I cannot say that even if she had received the ballot, that she would have voted. We believe that she would, but when we are talking about counting her vote for a candidate, that is a different horse.
The evidence in this case is that it [the absentee ballot] was mailed in compliance with the law, and there is further evidence *189 from the postmaster that others received mail oftentimes from this lady's box.
The Contestant has the burden of proof that she did not receive it, and saying that I did not get it out of the box, as Ben Fielder testified, and Hattie Hundall testified, does not meet the burden of the preponderance of the evidence, in my opinion.
The lawyers tell me that they know of no law on this issue, and this Court knows of no law, but I'm not going to go so far as to permit a vote to be counted on the proof that is before the Court. So, the motion you have made is sustained.
The evidence adduced at trial was uncontradicted and clearly showed that Rita Fielder's application for and actual absentee ballot was mailed by the clerk's office. Contestees submit that because Contestant relied solely on the evidence that Fielder did not receive the ballot, he failed to meet the requisite burden of proof in establishing his cause of action. With this we agree. There is ample evidence and proof, namely, the testimony of Childress and Magee and their respective affidavits, in the record that the ballot was indeed mailed. It is also evident from the trial record that no absentee vote was received from Fielder and thus cannot be considered. Therefore, we affirm the trial court's summary judgment in this regard.

CONCLUSION
This Court finds that the statutory provisions dealing with absentee ballots require strict compliance. The actions taken by the clerk, in delivering the three applications and ballots to her relatives do not comply with the absentee ballot statutes. As such, the trial court incorrectly granted partial summary judgment in favor of the Contestees. Therefore, we reverse and render, with directions to the Election Commission to discard the three absentee ballots at issue.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
HAWKINS, C.J., SULLIVAN and McRAE, JJ., concur.
BANKS, J., concurs with separate written opinion joined by PRATHER, P.J.
SMITH, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J.
BANKS, Justice, concurring:
I agree with the result reached by the majority but I write specially because I agree with my brother Smith that our decisions in Riley v. Clayton, 441 So.2d 1322 (Miss. 1983), and Wilbourn v. Hobson, 608 So.2d 1187 (Miss. 1992), and, more importantly, the principles upon which those decisions were based must be reconciled with today's result.
While it is appealing to say that Riley applies only to the disabled, the basis for Riley was a conclusion that there was no statutory prohibition against the clerk delivering ballots in person and that, in the absence of fraud, the voter should not be penalized. 441 So.2d at 1326-1328. The principle announced there is salutary and should not be ignored. Nevertheless, as today's circumstance reveals, the practice there approved is fraught with the danger of undetectable abuse. The danger is there whether the voter is disabled or able-bodied. In my view, this danger is recognized by our legislature in its enactment of Miss. Code Ann. 1972, § 23-15-735 (Supp. 1994) which, with respect to presidential elections, restricts the personal delivery of ballots to those voters appearing in person before the registrar or clerk pursuant to § 23-15-715(a), thus excluding personal delivery to the persons who qualify to receive ballots by mail pursuant to § 23-15-715(b). Miss. Code Ann. 1972, § 23-15-715. That danger also prompted an express warning in Riley to our registrars to strictly adhere to our statutory schemes, mandatory or directory, in order to avoid situations such as the one here at hand. 441 So.2d at 1328.
Today's opinion may be seen as overruling Riley and perhaps that is as it should be. A provision is either mandatory or it is not. It should not be mandatory for some and not for others. We have no license to relax a mandatory standard for disabled voters absent a showing of an impairment of some superior right. That is a job for the legislature *190 and it is a task which that body has shown itself capable of recognizing and performing. See Miss. Code Ann. § 23-15-715 (providing a different method of witnessing a disabled person's affidavit).
If we choose not to overrule Riley, however, our decision should be based upon statutory construction. That is to say, assuming that Riley sanctions personal delivery of ballots to some § 23-15-715(b) voters, is one who presents himself in the jurisdiction a § 23-15-715(b) voter by virtue of "temporarily residing outside the county" such that he "cannot comply with paragraph (a) of this section?" I would suggest that one who presents himself to the registrar within the county as done in the instant case is not one who "cannot" comply with paragraph (a) of § 23-15-715 and is ineligible for personal delivery of a ballot.
Finally, while I adhere to the view that a voter should not be penalized for the transgression of the election officials beyond the voter's control that principle does not obtain here. See Wilbourn v. Hobson, 608 So.2d at 1197 (Robertson, J., concurring). These voters actively participated in the transgression by failing to request ballots by mail as they were required to do, or in the alternative, by failing to present themselves in the county at the office of the clerk within normal business hours to apply for and cast their ballots as any other voter similarly situated.
PRATHER, P.J., joins this opinion.
SMITH, Justice, dissenting:
In this election contest, the majority, focusing on the actions of Ms. Childress, Clerk of the Town of Hickory, found no direct or inferred evidence of fraud, misconduct, or other intentional wrongdoing regarding her handling of three absentee ballots. Our precedent case law requires proof of any one of these factors or "a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified voters impossible to ascertain" to void an absentee ballot. Stringer v. Lucas, 608 So.2d 1351, 1361 (Miss. 1992), quoting Riley v. Clayton, 441 So.2d 1322, 1328 (Miss. 1983). In Wilbourn v. Hobson, 608 So.2d 1187, 1192 (Miss. 1992), this Court held that "absent evidence of fraud or some intentional wrong, technical irregularities will not invalidate an election." In his concurring opinion, Justice Banks recognizes the difficulty in avoiding the principles upon which Riley and Wilbourn were based. Concurring Opinion at 1.
In spite of the finding of absence of fraud or intentional wrong by Ms. Childress, the majority writes, "While this Court cannot point to specific acts of fraud or specific wrong doing, we can point to this unusual service by the clerk for her son and daughter-in-law and granddaughter. This service is questionable as it does not adhere to the specific language of the applicable statute. We also can point to the fact that this unusual service granted to the clerk's relatives created a situation whereby the ballots were actually delivered and marked outside of the clerk's office, which if approved, would in this case and in future election cases leave the possibility of fraud, deception and misuse of the clerk's position of public trust. Fraud, deception, and misuse are absent in this case but so is strict adherence to the applicable statute." Majority Opinion, at 185.
The majority's result appears weak and unsupported. This Court should instead refuse to nullify the exercise by these citizens of their constitutional right to vote by absentee ballot, properly executed.
The majority, while claiming on the one hand to recognize this Court's only case on point, on the other hand writes, "Notwithstanding this Court's holding in Riley v. Clayton, we hold that the clerk's actions in the present case were improper." Majority Opinion, at 186. The majority cites in support of its position that "other than declarations by the clerk, there is not a record of the occurrences involved in these ballots and certainly there is not a record that complies with the statute of how these ballots were delivered, executed and recorded." Majority Opinion, at 186. Then the majority admits that "certain requirements were indeed complied with by the clerk." What the majority neglects to tell the reader however, is that the clerk complied with all mandatory aspects of the statute. The lone, so called *191 "improper" action by the clerk was notarizing the absentee ballots of her relatives outside of city hall. The statute does not prohibit this action and our precedent case law has allowed such procedure. Justice Banks' concurring opinion states that "one who presents himself to the registrar within the county as done in the instant case is not one who "cannot" comply with paragraph (a) of § 23-15-715 and is ineligible for personal delivery of a ballot." Concurring Opinion, at 190. This statement fails to take into account that the incident complained about occurred on a weekend and that the son and daughter-in-law were working out of county during the week and that the grand-daughter was a student at Mississippi State. The weekend would be the only time according to this record that either of the three individuals would have been home and able to secure a ballot other than mailing one to their shared post office box with Ms. Childress, the clerk. The facts of this case are admittedly unusual which caused possible somewhat unusual procedures. Nevertheless, there was no fraud by anyone involved.
The majority's pronouncements are skewed. Regarding the first stated reason, footnote 5 of the majority opinion acknowledges that at trial Lewis failed to raise the issue of when the ballots were returned and attempts to do so for the first time before this Court. Accordingly, the Court should not even consider this issue. Crowe v. Smith is correctly cited as authority. Majority Opinion, at 184. Then, the majority, ignoring its own correct logic and law, relies upon this very factor as one of its reason for reversing and rendering this case. In any event, Ms. Childress' affidavit, the only evidence before the trial court on summary judgment, confirmed that the ballots were returned by her to the Town Hall on Saturday, June 5, 1993, prior to Tuesday's election.
Regarding the second reason to reverse cited by the majority, the record amply supports that all statutory requirements pertaining to the execution of the affidavits and absentee ballots in question were followed by Ms. Childress and her three relatives. Griffith maintained that if these three contested ballots had been cast by voters unrelated to Ms. Childress that a challenge to their validity would have been very unlikely. Griffith is probably correct in that assumption.
Lewis had the burden of proving other voters in similar situations would have voted in the same manner as the three individuals casting these contested ballots. Lewis failed to offer such proof and elected to rely on a mere allegation of possible irregularity. More importantly, the only evidence presented on this issue was from Ms. Childress, a fact apparently overlooked or ignored by the majority. She testified that if Ben Fielder, Rita Fielder or any other Fielder family members had contacted her on Friday or Saturday prior to the election and advised her that Rita Fielder had not received her absentee ballot, that she would have gone to town hall and made an application and ballot available for Rita Fielder. Additionally, Lewis and Ben Fielder both testified that Ms. Childress and her deputy clerk, McGee, had always been fair, honest and truthful in their dealings with them. There is simply no justification for the majority's position that Ms. Childress acted "improperly."
The issue of the three contested absentee ballots was determined by the trial court on summary judgment. The only evidence before the trial court was the Affidavit of the Town Clerk, Marie Childress. Ms. Childress stated that on June 4, 1993, she personally delivered to the Childress home the previously requested absentee ballots. Ms. Childress' son, Ray Childress, was temporarily employed in Tunica and would be over 50 miles away from his county of residence on election day. His wife, Helen Childress, was temporarily with him in Tunica. Both were staying at a motel. Their daughter, Tiffany Childress, a new student at Mississippi State University, had not yet received an assigned address and would be in college on election day. By Supplemental Affidavit, Ms. Childress stated that her three relatives shared a mutual post office box in Hickory. Had she mailed the ballot instead, she would have personally picked them up from the mail box and given them to her three family members to execute. There can be no doubt that the three individuals qualify for absentee ballots according to Miss. Code Ann. § 23-15-627 *192 (1972), as amended. The record reflects that all statutory requirements regarding the execution of the affidavits and absentee ballots were fully complied with by Ms. Childress.
It is noteworthy that even if Ms. Childress had mailed the ballots to the shared post office box, the end result would have been identical to the method that she used and now complained of by Lewis and the majority. Ms. Childress picked the mail up each day. She would have taken the ballots to her relatives, and being a Notary and the Clerk, would have attested the documents. She could then have taken them to Town Hall, or gone back to the Post Office and mailed the documents to the Town of Hickory, and as Clerk, picked them up on Monday morning and carried them to Town Hall. This situation should not invalidate the election because at most it could only constitute a mere "technical irregularity." Wilbourn at 1192. Absent fraud or intentional wrongdoing, which the majority admits does not exist in the case sub judice, what difference should it make which method was utilized by Ms. Childress. Common sense should prevail, especially since the relevant statutes have not been violated.
Neither has the majority prevailed in its attempt to distinguish Riley from the case at bar. This Court in Riley stated:
We hold that in the absence of any allegation or proof of fraud or tampering that the personal delivery of absentee ballots by the registrar or her deputies to physically incapacitated voters does not void those ballots.
441 So.2d at 1328 (emphasis added).
Riley cannot be limited in scope only to physically incapacitated individuals. Besides, logic dictates no reason, based on Riley, to grant a special exception only to incapacitated voters allowing them to vote outside of a town hall before the town clerk when they are not required to vote in the county before the town clerk in the first place. Due process mandates Riley be evenhandedly applied to all seven categories of individuals designated by § 23-15-713 as eligible to cast absentee ballots.
Considering whether the registrar's practice of personally delivering absentee ballots to physically incapacitated voters rendered the ballots void, the Riley court held:
Review of the wording of the statute does not reveal any language which expressly declares that the use of the postal service by which to send an absentee ballot to a voter is essential to the legislative scheme.
441 So.2d at 1326 (emphasis added).
Finally, concerning the issue of whether a statute is mandatory or directory, the Riley Court stated:
We have previously held that unless a statute expressly declares that a particular act is essential to the validity of the election, or that its omission shall render the election void, the statute will be treated as directory, and not mandatory, provided such act of irregularity is not calculated to affect the integrity of the election.
441 So.2d at 1326, citing Gregory v. Sanders, 195 Miss. 508, 15 So.2d 432 (1943); Hunt v. Mann, 136 Miss. 590, 101 So. 369 (1924).
Since § 23-15-715, which sets forth the procedure on applying for and executing absentee ballots is derived from the former § 23-9-605 (Supp. 1983), upon which our holding in Riley was based, the majority's position that § 23-15-715 is mandatory rather than directory has effectively been answered to the contrary.
Hatcher v. Fleeman, 617 So.2d 634 (Miss. 1993), also cited by the majority, adds little to the majority's analysis since the two individuals in that case who attempted to cast absentee ballots failed in all respects to execute the affidavits required by § 23-15-573. That section of the code mandated a properly executed affidavit prior to voting by absentee ballot. The absence of such affidavits constituted, as this Court held: "a condition precedent to permission to vote." Id. at 640.
In the case at bar, the statute does not expressly declare that a voter must appear before the clerk while the clerk is physically located in the town hall. Neither does any statute restrict the clerk from personally delivering an application and absentee ballot. In fact, clerks routinely follow this procedure in providing requested absentee ballots for numerous shut-ins and persons in nursing homes. Consistent with the result reached in Riley, the absence of such statutory restrictions *193 coupled with the lack of allegations or proof of fraud, misconduct or tampering by Ms. Childress, her deputy clerk or the voters involved would lead this writer to conclude these three ballots should not be invalidated.
What this entire episode boils down to is this. All three individuals requested the absentee ballots in person during the weekend. There can be no doubt, all three were qualified to vote absentee ballot, as the son and daughter-in-law were away from the city working in Batesville, (Miss. Code Ann. § 23-15-713(c)), and the grand-daughter was a student, (Miss. Code Ann. § 23-15-713(a)). Further, Miss. Code Ann. § 23-15-627 states that such persons can request that the ballots be delivered in person or mailed back to them. The ballots herein were delivered in person by the clerk. Had she mailed them, they would have gone to her shared post office box and she would have picked them up and as a notary, would have acknowledged the signature of her relatives who appeared personally before her to cast their ballots. Then the three absentee ballots would have been returned to city hall prior to 12:00 noon and full compliance with Miss. Code Ann. § 23-15-715. And the sole unrefuted proof in the record from Ms. Childress is that she would have done the same for anyone else who requested this assistance to vote, including relatives of Lewis.
Neither public policy nor any standard of fairness has been violated by the actions of Ms. Childress. The statutes and our precedent case law governing this issue do not prohibit a town clerk from permitting eligible absentee voters to execute their affidavits and ballots in the town clerk's presence outside of the Town Hall. To hold otherwise completely disenfranchises three registered voters who fully complied with the appropriate statutes in exercising their constitutional right to vote by absentee ballot.
I respectfully dissent.
DAN M. LEE, P.J., and ROBERT L. ROBERTS, Jr., J., join this opinion.
NOTES
[1] While the second issue at trial pertained to the proper handling of Rita Fielder's absentee ballot, at the conclusion of the testimony and prior to the giving of the jury instructions, it was determined that the Contestant had failed to present sufficient evidence that Fielder had not received her absentee ballot. Therefore, this issue was not submitted to the jury.
[2] Fielder also admitted that he never went back to the Town Hall to inquire on the ballot for his sister or to inform the office that it had not been received.
[3] On direct examination, Ben Fielder testified that he was the only person who checked Rita Fielder's mail and that he retrieved her mail from Post Office Box 76.
[4] White believed that the discarded affidavit ballot was cast in favor of Griffith.
[5] Contestant argues for the first time on appeal that the clerk failed to comply with the time requirements for returning absentee ballots. As this issue was not raised below, it is improper for the Contestant/Appellant to raise this for the first time before this Court. See Crowe v. Smith, 603 So.2d 301 (Miss. 1992) (holding appellant is not entitled to raise new issue on appeal, since to do so prevents trial court from having an opportunity to address alleged error).