617 So.2d 634 (1993)
Lewis HATCHER
v.
W.E. FLEEMAN, Jr.
No. 91-CA-1091.
Supreme Court of Mississippi.
April 15, 1993.
*635 Eugene A. Perrier, Vicksburg, for appellant.
John L. Maxey, II, Samuel L. Begley, Maxey Pigott Wann & Begley, Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
SMITH, Justice, for the court:
This appeal arises from the judicial review of an election contest lodged by W.E. Fleeman, Jr. It illustrates the importance of the statutory affidavit required by Miss. Code Ann. § 23-15-573 (Supp. 1990), when the name of the person desiring to vote does not appear upon the pollbooks.
Lewis Hatcher appeals from an adverse judgment entered against him on October 15, 1991, in the wake of Fleeman's lawsuit contesting the results of the Democratic Primary election conducted on September 17, 1991, for the post of county supervisor, District 1 of Issaquena County.
Hatcher filed this appeal after the special judge adjudicating a protest filed by Hatcher's opponent, W.E. Fleeman, Jr., ruled in Fleeman's favor. The judge found as a fact and concluded as a matter of law that two ballots cast by voters whose names did not appear on the pollbooks were invalid because the voters failed to vote by affidavit as required by Miss. Code Ann. § 23-15-573. The special judge held that the original certification of the Issaquena County Democratic Executive Committee declaring Fleeman as the nominee of the Democratic Party for the position of supervisor should be reinstated.
Hatcher contends on appeal he was denied due process of law because he received neither process nor reasonable notice of the petition contesting the election, had no opportunity to file an answer or a cross-complaint prior to the hearing, was effectively prevented from attending the hearing in person and presenting his case, and that no attempt was made to constitute a special tribunal to hear the contest. Hatcher further contends that Fleeman failed to carry his burden of proving the two ballots in question were invalid and could not be counted.
After careful scrutiny of the record, we agree with the findings made by the special judge and affirm his decision reinstating Fleeman as the winner of the Democratic Primary for the position of Issaquena County Supervisor, District 1.

FACTS
On September 17, 1991, a Democratic Primary election was conducted in Issaquena County, Mississippi. The two Democratic candidates for the post of Supervisor, District 1, were W.E. Fleeman, Jr., the incumbent, and Lewis Hatcher, the challenger. Fleeman received 87 votes while Hatcher received 86 votes. After canvassing the ballots, the Democratic Executive Committee certified Fleeman as the winner and Democratic nominee by one vote. Two so-called "affidavit ballots," i.e., paper ballots cast by affidavit, were not counted initially because the executive committee was informed the persons casting those ballots had been removed from the voting rolls.
In response to a protest filed by Hatcher, the Democratic Executive Committee was convened on Monday, September 30, 1991. At issue in Hatcher's protest were two ballots cast by Theodore Brooks and James Barnum whose names did not appear on the pollbooks prepared and maintained by the county election commission. One ballot *636 reflected a vote for Hatcher while the other ballot did not contain a vote for either candidate. After hearing the position of the candidates through their lawyers but prior to opening the ballot box and actually examining the two ballots, members of the executive committee voted seven (7) to four (4) to count the ballots in question. This resulted in a tie vote, 87 votes for Fleeman and 87 votes for Hatcher. Because the committee had already voted to count the ballots prior to independently verifying them, the committee declined to reconsider the matter even after the irregularity was brought to the committee's attention.
On Wednesday, October 2, 1991, Fleeman, aggrieved over the declaration of a tie after being certified initially as the victor, delivered a written protest to Winfred Wilkinson, Chairman of the Democratic Executive Committee in Issaquena County. After polling members of the committee by telephone, Wilkinson notified Fleeman the committee would not reconvene to consider his written protest.
The following day, Thursday, October 3, 1991, Fleeman filed in the Circuit Court of Issaquena County his sworn petition contesting the results of the primary election. Fleeman served his petition on Hatcher's wife at 6:15 p.m. on the evening of October 3, 1991.
On Friday, October 4, 1991, the Chief Justice of the Supreme Court entered an order appointing Howard Q. Davis, Circuit Judge, to preside over the election contest. A hearing was conducted in Indianola, Sunflower County, Mississippi, at 3:00 p.m. on Friday, October 4, 1991. Judge Davis explained that time was of the essence and that he had decided to proceed with the case on Friday because the second Democratic Primary election was scheduled to be held the following Tuesday. Due to the exigency of the situation and because his view was that the case would be resolved on issues of law, the special judge declined to continue the cause or have it heard in Mayersville, the county seat of Issaquena County.
The trial court heard the testimony of three (3) witnesses: Mary Vandevender, Circuit Clerk of Issaquena County; Winfred Wilkinson, former Chairman of the Democratic Executive Committee for Issaquena County, and W.E. Fleeman, Jr. who testified in his own behalf. Hatcher's attorney appeared at the hearing, cross-examined Fleeman and his witnesses, and objected to evidence.
Mary Vandevender testified that during a purging of the pollbooks, Brooks was removed from the voting rolls by the Election Commissioners on January 10, 1989, based upon a determination that he had moved from the jurisdiction. Barnum was removed from the rolls on September 6, 1978, because it was believed he had moved. In truth and in fact, neither had moved outside the county. According to Vandevender, appropriate notices were mailed by the Circuit Clerk to Brooks and Barnum informing them their names had been removed from the pollbooks and instructing the two men they could contest this action if they found it to be incorrect.
The testimony of Vandevender and Wilkinson reflected that the ballot box containing the paper ballots of Barnum and Brooks was unsealed at the meeting of the executive committee conducted on September 30, 1991, and the ballots were removed and examined. The two paper ballots were contained inside a brown, unsealed envelope marked with the words "Spoiled Ballots." Neither of the ballots was secured inside an "Affidavit and Ballot Envelope," and the affidavit required by Miss. Code Ann. § 23-15-573 was absent.
Both "affidavit ballots" were placed in a brown, unsealed envelope marked "Spoiled Ballots," written affidavits were not enclosed, and nowhere did the names of the voters in question appear, either on the ballots themselves or on the brown envelope. Further, the "Spoiled Ballots" envelope used was marked with a number four (4), indicating four ballots should have been found once election officials checked its contents. Instead, only the two ballots at issue were found. Thus, the ballots in this case are replete with irregularities indicating that the relevant statute was not followed *637 and the votes were correctly found to be invalid by the special judge.
No evidence of properly executed affidavits was indicated by a review of the record or in reading the minutes of the Executive Committee meeting of September 30, 1991, during which a discussion of the two ballots in question first took place. It seems obvious that if any evidence of properly executed affidavits existed, it would have been discovered and discussed by the committee members, the parties, or their lawyers, since the ballot box was opened and the ballots examined at this meeting. Hatcher submits it is possible that proper affidavit ballot envelopes were never supplied at the place where the two (2) ballots in question were voted. Even assuming this could be proven, however, the fact remains that no written affidavits in any form were executed by the voters involved, much less placed in a correct envelope.
At the conclusion of the hearing, the special judge issued a ruling from the bench followed by a written opinion and order declaring that because written affidavits were not included with either of the ballots in question, the ballots of Brooks and Barnum were invalid and should not have been counted. Accordingly, the special judge reinstated the original certification of the Democratic Executive Committee declaring Fleeman the winner.
Hatcher appeals to this Court and presents two issues for discussion:
I. THE LOWER COURT ERRED IN NOT FOLLOWING THE DICTATES OF SECTIONS 23-15-929, 23-15-931, AND XX-XX-XXX OF THE MISSISSIPPI CODE ANNOTATED OF 1972 AS AMENDED. THE CONTESTEE WAS DENIED DUE PROCESS OF LAW BECAUSE HE DID NOT RECEIVE PROCESS OR REASONABLE NOTICE OF THE PETITION AND THE HEARING, WAS NOT ALLOWED THE OPPORTUNITY TO FILE AN ANSWER OR A CROSS-COMPLAINT, WAS EFFECTIVELY PREVENTED FROM ATTENDING THE HEARING AND PRESENTING HIS CASE BECAUSE THE HEARING WAS NOT HELD IN ISSAQUENA COUNTY, AND NO ATTEMPT WAS MADE TO CONSTITUTE A SPECIAL TRIBUNAL TO HEAR THE CONTEST. THE CONTESTEE IS ENTITLED TO A NEW TRIAL.
II. IF THE SUPREME COURT FINDS THE TRIAL COURT HEARING PROCEDURE WAS CORRECT OR DID NOT AMOUNT TO REVERSIBLE ERROR, THEN THE CONTESTANT FAILED TO CARRY HIS BURDEN OF PROOF AND THE ORDER OF THE COURT SHOULD BE REVERSED AND THE RESULTS OF THE PRIMARY ELECTION DECLARED A TIE. HOWEVER, PRESUMING THE TWO AFFIDAVIT BALLOTS WERE ILLEGAL, SINCE THE RESULT WAS CHANGED, A SPECIAL ELECTION SHOULD BE ORDERED. IN EITHER CASE, THE CONTESTEE IS ENTITLED TO A SPECIAL ELECTION.

ISSUES

I. Procedural Due Process
Hatcher contends the special judge disregarded statutory procedures governing election contests which denied Hatcher due process of law as guaranteed by the Mississippi Constitution. Miss. Code Ann. § 23-15-929 (Supp. 1990) contemplates a hearing conducted in the county where the contest or complaint has been filed. It also requires that both the contestant (Fleeman) and contestee (Hatcher) have "reasonable notice" of the hearing served in a "reasonable manner" as the special judge may direct. The statute also allows the contestee an opportunity to promptly file an answer and cross-complaint.
Miss. Code Ann. § 23-15-931 (Supp. 1990) authorizes the circuit clerk to issue subpoenas for witnesses and to summon each of the five (5) election commissioners of the county requiring them to attend the hearing as a part and parcel of the special tribunal. This section also states that during the hearing the original contestant (Fleeman) shall have both the burden of proof and the burden of going forward with the evidence.
*638 The hearing forming the centerpiece of Hatcher's appeal was conducted at 3:00 p.m. on Friday preceding the second primary election scheduled for Tuesday. Hatcher claims he is entitled to a new hearing because (1) he did not receive process or reasonable notice of the petition or the hearing; (2) he was not given the opportunity to file an answer or cross-complaint; (3) he was personally prevented from attending the hearing and presenting his case because the hearing was held in Sunflower County rather than Issaquena County; and (4) no attempt was made to convene a special tribunal to hear the case.
The statutory scheme guiding the courts in the review of election contests clearly mandates swift disposition. Miss. Code Ann. § 23-15-929 requires the Chief Justice to be notified "immediately," the Chief Justice is to "forthwith" designate a special judge to hear the protest, and the special judge is directed to discharge his designated duty at the "earliest possible date." It is enough to say that because of the urgency of the situation, a prompt hearing was required.
The intent of the legislature for the expedient handling of election contests is clear in language found in Miss. Code Ann. § 23-15-937 (although inapplicable in this case). This section states:
[T]he hearing must be completed and final judgment rendered in time to permit the printing and distribution of the official ballots at the election for which the contested nomination is made. When any judge or chancellor lawfully designated to hear a contest of complaint, in this section mentioned, shall not promptly and diligently proceed with the hearing and final determination of such a contest or complaint, he shall be guilty of a high misdemeanor in office unless excused by actual illness, or by an equivalent excuse.[1]
Although Miss. Code Ann. § 23-15-935 grants to the special judge the power to compel the attendance of the election commissioners, this statute contemplates a situation where the special judge, in the interest of time and judicial efficiency, can proceed to hear the election contest without any one of the commissioners or all of them. It is clear that the statutory framework relating to election contests requires that they be completed as quickly as possible in order that the scheduled primary elections can proceed as planned. Miss. Code Ann. § 23-15-929 directs the special judge to determine the election contest "at the earliest possible date." In this case the election contest hearing took place on the Friday immediately preceding the Tuesday on which the next primary was scheduled. We hold that given the exigencies of the situation and the facts of this case, proceeding without the election commissioners was not error.
With respect to the matter of subpoenas, the special judge stated into the record prior to the 3:00 p.m. hearing conducted on October 4th that this matter needed to be resolved forthwith, and that it would be impossible under the circumstances to issue subpoenas for everyone involved for a hearing conducted Friday, October 4th or Saturday, October 5th, 1991, and have them properly served.
More importantly, the judge also stated he felt the matter would be resolved on an issue of law as opposed to fact. As such, the hearing would be heard in Indianola rather than Mayersville. The failure to hold the hearing in Issaquena County was, if error, harmless. There is nothing in the record to indicate that conducting the hearing in Mayersville would have affected the result by allowing additional facts necessary for a just resolution to be obtained.
Hatcher's wife had been informed of the hearing at 6:00 p.m. the previous evening, October 3, 1991. Hatcher chose to go out of town, apparently on business, as he was in Louisiana delivering equipment. Hatcher's attorney, however, became aware of the hearing by noon on October 4, 1991. *639 After picking up protest papers from Fleeman's lawyer, he drove to Indianola where he actively participated in the proceedings by cross-examining Fleeman and his witnesses and arguing the case in Hatcher's behalf.
Although Hatcher's lawyer declined, prior to the hearing on Friday, October 4, to announce "ready," he was familiar with all the relevant facts which had been fully developed the previous Monday, September 30th, when the same lawyer had raised and successfully argued Hatcher's case before the Democratic Executive Committee. Counsel did not have to meet any burden of proof for his client because the burden of proof was on Fleeman and his lawyer. Counsel was thoroughly acquainted with both the facts and issues since it was Hatcher's written protest that initiated the contest in the beginning.
It was neither error nor an abuse of discretion for the special judge to refuse to continue the hearing for a day longer, as Hatcher's counsel requested. The granting of a continuance is largely a matter within the sound discretion of the trial court and unless manifest injustice appears to have resulted from a denial, this Court should not reverse. Rogers v. Rogers, 290 So.2d 631 (Miss. 1974). Because of the urgency of the situation, a prompt hearing was required.
Both the Chairman (Wilkinson) and the Secretary (Vandevender) of the Issaquena County Democratic Executive Committee were testifying witnesses. Vandevender gave a complete account of how the two voters, Brooks and Barnum, were removed from the pollbooks. Wilkinson testified in detail concerning how the two ballots were canvassed and ultimately counted by the committee. It is clear that all relevant facts were brought to the attention of the special judge.
Hatcher filed a Motion for a New Trial one week after the hearing, and no new facts were alleged. Hatcher made no attempt to demonstrate how the outcome would have been any different had he received proper notice, had he filed an answer, had subpoenas been issued, had the election commissioners been required to attend, had the hearing been held in Mayersville, or had Hatcher been personally present at the hearing.
No trial, of course, is free of error. "[T]o require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced." Davis v. Singing River Electric Power Association, 501 So.2d 1128, 1131 (Miss. 1987). Such has not been demonstrated here. Any errors or irregularities were insubstantial under the facts of this case and had no material bearing on its outcome.

II. Sufficiency of Proof
Hatcher also contends the election should be declared a tie because Fleeman failed to prove by a preponderance of the evidence the two ballots in question were illegal. We disagree.
By virtue of Miss. Code Ann. § 23-15-931, the special judge is the "controlling judge" of both the facts and the law, although the election commissioners sit as advisors to the determination of the facts. The statute strongly suggests the special judge is the "true trier of facts." Rizzo v. Bizzell, 530 So.2d 121, 126 (Miss. 1988). Generally, we will defer to the findings made by the special judge. Id.
Miss. Code Ann. § 23-15-573 allows a person whose name does not appear upon the pollbooks to vote but only after that person makes affidavit in writing that he either (1) is entitled to vote or (2) has been illegally denied registration. The statute reads, in its entirety, as follows:
No person whose name does not appear upon the pollbooks shall be permitted to vote in an election; but if any person offering to vote in any election whose name does not appear upon the pollbook shall make affidavit before one (1) of the managers of election in writing that he is entitled to vote, or that he has been illegally denied registration, his vote may be prepared by him and handed to the proper election officer who shall enclose the same in an envelope with the written affidavit of the voter and seal it *640 and mark plainly upon it the name of the person offering to vote. In canvassing the returns of the election, the executive committee in primary elections, or in a general election the election commissioners, shall examine the records and allow the ballot to be counted, or not, as shall appear to be legal.
We agree with Fleeman that the evidence adduced during the hearing clearly established the paper ballots of both Barnum and Brooks were improperly cast. Their names had been removed from the pollbooks in 1978 and 1989, respectively, and neither man, in the wake of notices issued to each, had come forward to contest this action.
Notwithstanding the posture of the pollbooks, Barnum and Brooks could have still cast a legal ballot had they executed an affidavit in writing reflecting either they were entitled to vote or they were illegally denied voting registration. Affidavit ballots [are] "those which are issued to individuals whose names do not appear on the pollbooks but who aver in writing that they are eligible to vote in that precinct." Wilbourn v. Hobson, 608 So.2d 1187, 1188 (Miss. 1992). The failure of the paper ballots cast by Barnum and Brooks to have written affidavits attesting to their entitlement to vote rendered their votes illegal and void. We hold that where, as here, a person's name fails to appear upon the pollbooks, the affidavit required by § 23-15-573 is a condition precedent to permission to vote. In other words, the making of the proper affidavit in writing before an election manager is mandatory, not directory.
"Affidavit ballots are used because the prospective voter is being challenged as to his qualifications to vote, namely, people whose names do not appear on the pollbooks ..." Wilbourn, 608 So.2d at 1191. These ballots should be kept separate and apart from other election materials so that the registration status of the voters can be independently verified by the executive committee in primary elections or the election commissioners in general elections. Id. at 1193.
There were other less onerous irregularities. The two paper ballots in question had been placed inside an envelope labeled "Spoiled Ballots." By virtue of § 23-15-573, a statute establishing the procedure for managing affidavit ballots in particular, they should have been placed inside an envelope together with the written affidavit of the voter. Each envelope should have then been sealed and marked plainly with the name of the person offering to vote. As a practical matter, in most counties, the form of the statutory affidavit is pre-printed on the face of the ballot envelope. See Wilbourn, 608 So.2d at 1195, app. A. We held in Wilbourn the absence of initials on twenty-eight (28) contested affidavit ballots did not render the ballots invalid under our election code. We also strongly suggested, however, that the making of the affidavit was crucial.
Hatcher concedes that a written affidavit is required where the voter's name does not appear on the pollbooks. He also concedes that neither Brooks nor Barnum executed such an affidavit at the time they cast their ballots. Accordingly, we hold that Fleeman successfully proved beyond a preponderance of the evidence the votes were illegally cast and improperly counted.

Should a Special Election Be Ordered?
Finally, Hatcher argues that even if the two ballots were illegal in both fact and law, a special election should be ordered since the result of the election would be changed from a tie to a declaration that Fleeman was the winner by one vote, 87 votes to 86 votes.
Special elections are not favored because of the expense involved and the likelihood of a diminished voter turnout. In Noxubee County Democratic Executive Committee v. Russell, 443 So.2d 1191, 1197 (Miss. 1983), we stated:
When deciding whether a special election is warranted, we recognize competing interests which must be weighed and balanced. While the voters are not parties to this contest, their interests are paramount. Special elections are a great expense for the county and its taxpayers. *641 Beyond that, the turnout for a special election is never as great as when there are a number of candidates on the slate. By contrast, we feel that the rights of the individual candidates cannot be allowed to overshadow the public good.
As far as the public good is concerned, the rights our law gives to losing candidates to contest elections form a double edged sword. While they serve to prevent the fraudulent manipulation of the public will, they necessarily provide a way for the unsuccessful candidate to use innocent human errors to his own advantage, thereby winning a second chance.
As a general rule, the special judge should always follow each statute governing election contests, i.e., hold the hearings in the county where the dispute originates, issue proper, reasonable notice to all parties, and summon election commissioners to serve as tribunal officers along with the judge, unless they waive appearance. At first glance, one might be concerned with the speed of the special judge's handling of this case. Accordingly, the issues raised on appeal might then take on major significance. However, on closer examination we conclude there were extenuating circumstances in this case which demanded expediency, but more importantly, we find, even if all the issues were meritorious, the result fails to indicate manifest injustice occurred. The undeniable fact still remains, properly executed affidavits never existed, thus the ballots were illegal.
We concur with Fleeman that the will of the voters has been discerned. Only two ballots were disqualified, not ballots of the entire precinct. The two ballots were not counted during the initial canvass when, in the very beginning, the count showed that Fleeman was the winner, 87 votes to 86 votes. It was only after Hatcher's protest that the executive committee reversed itself and voted 7 to 4 to count the ballots of Brooks and Barnum. Their ballots constituted barely over 1 of the total ballots casts.
Although disqualification of the two illegal ballots changes the result of the election from a tie to a win for Fleeman by one vote, we do not find a special election warranted under the circumstances of this case where, after the initial canvassing of the election returns, the two ballots in question were excluded and Fleeman was certified the winner.
The hearing conducted before the special judge established beyond a preponderance of the evidence that following Hatcher's initial protest, the Democratic Executive Committee improperly certified the election a tie.
Finally, it does not appear that the result in the present case would have been different had appellant received more reasonable notice, had the hearing been held in Issaquena County, had the election commissioners been issued subpoenas, or had appellant, in addition to his attorney, been present at the hearing. Regardless of these factors, appellant must fail in this cause since he cannot move past the primary obstacle to his success, that being that the two (2) alleged "affidavit ballots" at issue were not in accordance with the statutory requirements of Miss. Code Ann. § 23-15-573 and were therefore illegal and not to be counted in this election. The decision of the special judge declaring the two ballots invalid and reinstating the original certification of Fleeman as the victor is affirmed.
JUDGEMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.
NOTES
[1] The statute deals with a multi-county election contest and therefore would not apply to the present case.