692 So.2d 74 (1997)
Fred ESCO, Jr.
v.
Ed BLACKMON, Jr.
No. 96-CC-00097-SCT.
Supreme Court of Mississippi.
April 17, 1997.
*75 E. Michael Marks, Jackson, for Appellant.
Jessie L. Evans, Wesley T. Evans, Blackmon Blackmon & Evans, Canton; Roosevelt N. Daniels, Jr., Jackson; Gail Shaw-Pierson, Canton; Herbert Lee, Jackson; Willie L. Bailey, Bailey & Bailey, Greenville, for Appellee.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
*76 McRAE, Justice, for the Court:
This appeal arises from a January 25, 1996, resolution of the Mississippi House of Representatives to unconditionally seat Ed Blackmon, Jr., as the duly elected member of the Mississippi House of Representatives from District 57. The appellant, Fred Esco, Jr., contends that the Mississippi Legislature had no jurisdiction to conduct a "hearing" regarding his election contest, since he had never been a member of the House. He further contends that the legislature denied him procedural due process to pursue his election contest meaningfully. Because we find that the Mississippi Constitution and Election Code give the legislature the power to investigate claims of improper activities during elections, we hereby affirm the Mississippi House of Representatives' resolution to seat Ed Blackmon as Representative from District 57 of Mississippi.

I.
On November 7, 1995, Fred Esco and Ed Blackmon vied for the position of District 57 delegate to the Mississippi House of Representatives. The voters of Madison and Yazoo County re-elected Blackmon by a vote of 4,007 to 2,954.
Esco alleged that certain irregularities existed during the election and wanted to contest the outcome. Specifically, Esco alleged that photocopies of official ballots were used, which was inappropriate because the counting machine would not register the ballots. He also alleged that poll workers instructed voters that "ballots must be unanimously for Democrats or the ballots all marked for others will not be tallied." Esco also accused Blackmon aides of exercising undue influence on voters.
Esco filed his complaint in the Mississippi House of Representatives and in the Circuit Courts of Madison and Yazoo Counties. Blackmon answered the complaint, denying the allegations made against him. Esco contacted the Speaker of the House, Tim Ford, on December 18, 1995, asking him to provide a forum to hear the matter.
Meanwhile, Esco filed a motion for additional time to respond to discovery on December 28, 1995. In it, Esco's attorney claimed that a heavy trial docket and the holiday season had delayed his action on the case. Blackmon responded on the same day, alleging that Esco had plenty of time to move forward with the election contest and that he should not be given additional time to conduct discovery.
The House of Representatives passed a resolution on January 2, 1996, to conditionally seat Blackmon and to appoint a committee for the resolution of the election contest. The House Committee consisted of Representatives Edwin Perry, Percy Watson, Richard Livingston, Joe Warren, Bill Denny and Committee Counsel, Teresa Beck. The Committee convened on January 11, 1996 to hear from counsel and parties in regard to specific requests they might have of the committee.
Esco contended that he understood that the purpose of the hearing would be to ask the Committee about procedural matters and not to try the case. Through his counsel, who was present with Esco, he requested the right to inspect ballot boxes from the election and supplement discovery before the hearing. After Esco's counsel made a statement and answered questions from the Committee, Blackmon also gave a statement and answered questions from the Committee. Esco's counsel objected to the exchange made between Blackmon and the Committee, claiming that he was not aware that the Committee was going to hear evidence at this hearing. The Committee offered Esco's counsel an opportunity to respond to Blackmon's comments at the hearing, to which Esco's counsel responded that because his discovery was not yet complete, he could not give a prepared response on that day. After discussion among Committee members, Esco's counsel, and Blackmon regarding the extent of the hearing, Committee chairman Edward Perry noted that the Committee did not have any set guidelines or rules to follow in such a procedure. However, the Committee decided that it would meet and decide what procedures it would follow in the matter.
On its own, the Committee met with the Madison County Election Commission on *77 January 24, 1996, taking testimony from Commissioners George Elliott, Edward Hayes, Jim Butler, Alfred Boyd, and Azzie Jackson, and from Madison County Circuit Clerk Lee Westbrook. Afterwards, the Committee concluded that Blackmon should be unconditionally seated as a member of the House of Representatives from District 57, and presented House Resolution 20 to that effect on January 25, 1996. It is from this resolution that Esco now appeals.

II.
Section 38 of the Constitution provides in clear language that each house of the legislature "shall judge of the qualifications, return and election of its own members." Mississippi Constitution, Art. 4, § 38. This Court has stated:
The almost universal constitutional doctrine in the United States and the several states which have constitutions containing this or similar provisions is that:
Each legislative body is the sole judge of the elections, returns, and qualifications of its own members, and its action in admitting or expelling a member is not reviewable in the courts. Furthermore, a statute which requires a court to inquire into the commission of corrupt practices in the election of a member of the legislature is not constitutional.
Foster v. Harden, 536 So.2d 905, 906 (Miss. 1988) (citations omitted). Such a constitutional provision vests in the Legislature the sole and exclusive power to judge the election and qualification of its own members.
The Mississippi Election Code provides for the disposition of proceedings regarding election of citizens to the Mississippi Legislature:
§ 23-15-951. Filing of petition; issuance of summons; trial by, and verdict of, jury; assumption of office.
In case the election of district attorney or other state district election be contested, the petition may be filed in any county of the district or in any county of an adjoining district within twenty (20) days after the election, and like proceedings shall be had thereon as in the case of county officers, and the person found to be entitled to the office shall qualify as required by law and enter upon the duties of his office.
§ 23-15-955. Proceedings with respect to election of member of Senate or House of Representatives.
Except as otherwise provided by Section 2-15-961, the person contesting the seat of any member of the Senate or House of Representatives shall, within thirty (30) days after the election, serve notice, in writing, upon such member, stating particularly the grounds upon which the election is contested. Thereupon either party may proceed to take the depositions of witnesses before any justice court judge, or other officer qualified to administer oaths in the district or county, as convenient as may be to the residences of the witnesses. The depositions so taken shall be read as evidence before the Senate or House as the case may be; but the opposite party shall have ten (10) days' notice of the time and place of taking the same.
§ 23-15-957. Power to compel attendance of witnesses and production of documents.
Each house of the Legislature, or any committee appointed to investigate the facts concerning the election or qualification of any member or persons claimed to be such, shall have power to compel the attendance of witnesses and the production of such documents or papers as may be required.
Esco argues that § 23-15-955 overrides Section 99 of the Mississippi Constitution, which provides, "The Legislature shall not elect any other than its own officers and State Librarian." Miss. Const. Art. 4, § 99. Esco says that because § 23-15-955 is in conflict with the Mississippi Constitution, the statute is unconstitutional. See Chevron USA, Inc. v. State, 578 So.2d 644, 648 (Miss. 1991). Esco's position is that by determining his fate, since he is a non-member, the House of Representatives has exceeded its jurisdiction. Esco argues that, as a result, the committee can "merely pick any candidate as its member of the Legislature."
Esco misconstrues the Legislature's actions, because it does not elect or choose its members through its process of dealing with *78 election contests. After a winner is certified, the Legislature merely examines the elective process to determine whether illegal or corrupt practices have taken place. If, as a result of the election contest, the legislative committee determines that the election was improperly administered, then it must apply certain guidelines to determine whether a special election must be held. Therefore, § 23-15-955 is not unconstitutional, because it does not provide for the Legislature to elect its own members.
As to the jurisdiction of the House of Representatives to conduct proceedings, Esco is also in error. Clearly, based on § 23-15-951, Esco was correct in filing the petitions with the circuit court. However, it is just as clear that § 23-15-957 gives the houses of the Legislature, or a committee appointed to investigate facts concerning the election of a member, the power to compel witness testimony and production of documents relating to the investigation. Therefore, it cannot be said that the Legislature had no jurisdiction to interview the Election Commission or hear from Esco and Blackmon.
It should be noted that § 23-15-951 permits a jury to be empaneled to decide issues in an election contest; however, it does not mandate a full trial of all issues before a jury. Lewis v. Griffith, 664 So.2d 177, 187-88 (Miss. 1995). The Mississippi Code does not reconcile the disposition of proceedings in the Legislature with the outcome of a trial by jury.
The Election Code, as structured, establishes a kind of concurrent jurisdiction for resolution of election contests of legislative officials. Although it was not the only forum, the Mississippi House of Representatives was a proper forum for adjudication of this election contest. As such, we decline to deem the Committee's actions in regard to Esco's election contest void.

III.
In the alternative, Esco asserts that his due process rights were violated by the Legislature hearing an election contest brought by a non-member. Specifically, Esco says that he was misled about the nature of the hearing, the hearings were not open to the parties or the counsel, and he was not allowed to inspect ballot boxes or present evidence before the committee or the full Legislature.
The appellant provided a full transcript of the "hearing" conducted by the House Committee with Esco and Blackmon present. A reading of the record excerpts shows that Esco stated to the Committee that, "Right now I don't want to try my case, and y'all don't want to hear the case now ..." The chairman of the Committee stated that he was under the impression that each party would make a presentation in which they could basically say what they wanted to say. The counsel for the Legislature, Teresa Beck, stated that she told Esco's counsel that each side would be able to state its side of the story, after which time the committee would decide how procedures would be handled. Committee chairman Perry stated that the meeting was not to consider evidence, but that the parties understood that they were to make a presentation and that questions would be asked of them.
Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Procedural due process questions are addressed in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-460, 109 S.Ct. 1904, 1907-08, 104 L.Ed.2d 506 (1989).
This Court has dealt before with due process claims of an election contestant, in the context of a primary election. Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss. 1993). In Fleeman, an election contest hearing took place on the Friday immediately preceding the Tuesday on which the next primary was scheduled. Id. at 638. As a result, election commissioners were not present and the contestant *79 claimed that his due process rights were violated because he did not have proper notice, opportunity to file an answer, or opportunity to attend the hearing himself. Id. This Court found that the trial court did not err in failing to continue the hearing for a day longer, because the contestant's attorney was present and familiar with relevant facts, the contestant chose to leave town, and exigent circumstances required immediate hearing. Id. at 639.
In the case sub judice, Esco appeared at the initial hearing, thus submitting himself to the jurisdiction of the Mississippi House of Representatives. Although he claimed that he was not prepared to make a statement since he had not even completed discovery, the record reflects that Esco was given notice of the appearance before the Committee. When the House Committee chair asked Esco's attorney to express his reasons for contesting the election, Esco's attorney made a brief statement, and entertained some questions. Subsequently, Blackmon and his attorneys made statements to the committee, to which Esco's attorney objected, saying that they were presenting evidence which would be prejudicial to Esco.
Because this case did not involve a primary election, there were no time constraints like the ones that existed in Fleeman. The only exigency was for the citizens of District 57 to have a duly elected representative seated in the House of Representatives. The House resolution included in the record states that the Committee met on multiple occasions, offered each party the opportunity to present his version of the facts with supporting evidence, heard testimony and received documentary evidence from attorneys for the respective parties. On its own, the Committee interviewed the Madison County Election Commissioners regarding the accusations made by Esco. Combined with other materials submitted to them, the House Committee determined that Blackmon should be unconditionally seated.
It appears that Esco had sufficient time (more than two months) to conduct other discovery between the time the complaint was filed and the time Blackmon was seated in the House. The record shows no documentary support for Esco's allegations. Esco's attorney only stated that his alleged statements from witnesses pertaining to the election had not yet been reduced to writing, under oath. Further, the lack of effort by Esco denied the citizens of District 57 lawful representation. At the very least, either Esco or his attorney could have produced witnesses who supposedly observed misconduct by the Blackmon camp, in time to submit to the Committee.
On the contrary, Blackmon deposed the contestant himself and offered affidavits from Election Commission members who testified that they were not aware of misconduct from Blackmon's camp or any reports of irregularities from Esco or his supporters. Esco was given the chance to respond to Blackmon's statements but did not really respond to them, except to say that he was not ready to make a presentation at the time.
The House Committee, in deciding to interview the Madison County Election Commission on its own, apparently relied on prior proceedings for guidance in disposition of this matter. Since the contestant did not provide any documentary evidence under oath showing a likelihood that Blackmon knowingly participated in election irregularities, the Committee did what it was empowered to do. At the hearing conducted by the Committee, Esco's counsel was familiar enough, or should have been familiar enough, with the facts supporting his case to make a presentation to the Committee.
This Court finds these points of error to be without merit. Because Esco voluntarily submitted himself to the jurisdiction of the Legislature and received a hearing, his due process rights were not compromised.

IV.
We conclude that the decision by the House of Representatives to seat Ed Blackmon as representative from District 57 was appropriate. We accordingly affirm the House's resolution.
JUDGMENT IS AFFIRMED.
*80 DAN LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., concurs in result only.
MILLS, J., not participating.