750 So.2d 1286 (2000)
Danny J. FEAZELL a/k/a Danny Junior Feazell, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01104-COA.
Court of Appeals of Mississippi.
January 18, 2000.
*1287 Clay S. Nails, Corinth, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Danny J. Feazell was convicted of manslaughter by an Alcorn County Circuit Court jury. On appeal he asserts that the trial court erred in denying his motion for a continuance and his trial counsel's motion to withdraw. Feazell also argues that the trial court erred in excluding certain impeachment evidence that he wished to introduce. We find no merit in Feazell's assignments of error and affirm the conviction.

FACTS
¶ 2. Danny Feazell sought to visit his three children at the house of the children's mother, Glenda Brawner, and of Glenda's husband, Forrest Brawner. Feazell rode to the Brawner home with his then-girlfriend, April Walker. Feazell got out of the vehicle at a service station across the street from the Brawner home. Walker then went to the house and told the Brawners that Feazell wanted to take his children to dinner. Mrs. Brawner objected because it was a school night, but allowed the children to walk across the street to visit with their father.
*1288 ¶ 3. Accompanying the three children were Glenda and Forrest Brawner, Feazell's girlfriend April Walker and April's daughter, and Mrs. Brawner's sister, Sara Hutcheson. Feazell was angry that Forrest Brawner had accompanied his children and began cursing and yelling. As a result, Mrs. Brawner instructed her children and Hutcheson to go back to the house. When Hutcheson, the children and the Brawners had almost reached the house, Feazell ran towards them. He shoved Glenda Brawner to the ground and hit Forrest Brawner from behind, causing him also to fall. Feazell then jumped on Mr. Brawner and began to beat him in the head with his fists.
¶ 4. Nora Feazell, the oldest child, telephoned the police and reported the fight. At various points during the call, Hutcheson and Glenda Brawner also spoke with the dispatcher. While that was occurring, Feazell's girlfriend Walker backed her automobile into the street. Feazell jumped up, got in the car, and the two drove away.
¶ 5. When emergency medical personnel arrived, Forrest Brawner had no pulse and was not breathing. At the emergency room he was resuscitated. Later that evening he was transferred to a hospital in Tupelo, where he died. Feazell was arrested, indicted and tried for the murder of Forrest Brawner. Feazell was convicted of manslaughter and sentenced to twenty years imprisonment. This is his appeal.

DISCUSSION

I. Denial of counsel's motion to withdraw and Feazell's motion for a continuance
¶ 6. When reviewing the trial court's decision to deny a defendant's motions for a continuance and a counsel's motion to withdraw, our concern is whether these denials were abuses of discretion. Burnett v. State, 285 So.2d 783, 784 (Miss. 1973) (motion to dismiss attorney); Johnson v. State, 631 So.2d 185, 189 (Miss.1994) (motion for continuance). Absent an abuse of discretion by the trial court we will not reverse.
¶ 7. We address first the motion of Feazell's court-appointed counsel to withdraw. The motion was filed on the morning of the scheduled trial and was denied. The basis for this motion was Feazell's desire to hire private counsel and his failure to cooperate with his current attorney. On the hearing on the motion, appointed counsel stated that Feazell was unhappy with the decisions made by his attorneys. Additionally, Feazell allegedly believed that the victim's family had bribed his attorneys to assure a conviction. Upon examination, Feazell testified that he had contacted a private attorney who would not proceed without a continuance. Feazell also seemed to indicate that the private attorney recommended the same course of action taken by his appointed counsel.
¶ 8. Feazell had once before been permitted to replace an appointed counsel because of the allegation that this previous attorney had been "bought out" by the victim's family. The judge termed the new motion filed on the day of trial as a "thirteenth hour" motion. To the extent one of the grounds was Feazell's refusal to cooperate, the judge concluded that Feazell was fully aware of the consequences of his actions and would have to bear them. To find error would require us to conclude that the trial judge is at the mercy of the manipulations of a defendant. We do not so find. Counsel's motion to withdraw was properly denied.
¶ 9. The motion for a continuance was based upon the premise that Feazell's psychiatric reports were not made available to the defense until a week before trial, and that these reports were incomplete. Feazell contends that he required additional time to have an independent expert evaluate these reports to determine competency. The trial court found that Feazell was not entitled to a state funded psychiatric evaluation independent of the exam already performed by state doctors.
¶ 10. The supreme court has concluded that evaluation by a psychiatrist from the *1289 Whitfield State Hospital satisfies the constitutional requirements set out in Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Butler v. State, 608 So.2d 314, 321 (Miss.1992). Feazell was found competent by both the psychiatrist and by the court during the competency hearing. We find no evidence presented by Feazell that outside expert assistance was required. "Something more than undeveloped assertions that the requested assistance would be beneficial is required." Hansen v. State, 592 So.2d 114, 115 (Miss. 1991). We find no manifest injustice resulting from the denial of the continuance. Consequently, there is no reversible error. Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993).

II. Exclusion of impeachment evidence
¶ 11. Finally, Feazell argues that the trial court erred in excluding evidence usable as impeachment during the cross-examination of Glenda Brawner. Defense counsel had asked Mrs. Brawner whether or not the deceased Forrest Brawner had ever made threats against Feazell:
Q: Had Mr. Brawner ever in the past in your presence made any remark that he would do physical harm of any kind to Mr. Feazell if he [came] out to his home?
A: No, sir.
Q: Did he ever make any remark in your presence and in the presence of Debra Hubbard at your home out in Kossuth that if Mr. Feazell ever came back out there that they would have to take him off in a body bag?
A: No, sir.
* * * * *
Q: And up to that point he had not taunted Mr. Feazell in any manner?
A: No, sir.
It was at this point that defense counsel sought to play an audio cassette tape to impeach the testimony by showing that such threats had been made. After objection by the prosecution and a bench conference, the trial court excluded the tape from being played. Feazell urges that this exclusion was improper and was reversible error.
¶ 12. As a proffer, the tape was later played outside the presence of the jury. There is testimony from Feazell's sister, who made the tape, that Mrs. Brawner was present when the statements on the recording were made. Thus the tape, if accepted as properly authenticated and as containing threatening statements made in Mrs. Brawner's presence, could have impeached the earlier testimony.
¶ 13. Mrs. Brawner, in a hearing outside the presence of the jury, disputed that she had heard such comments as were on the tape, and whether Mr. Brawner's voice was even on the admittedly difficult to understand tape. Still, the trial court never ruled factually on those points. When the issue first arose, the trial judge indicated that there were several reasons that the audio tape would be excluded, but only explained that he found a discovery violation. A criminal trial procedural rule requires that the accused provide to the State, once the defendant has requested discovery himself, copies of all recorded statements by any witness for his case in chief. URCCC 9.04(C)(1). Feazell argues that no discovery error occurred since he did not offer the tape during his case-in-chief but introduced it because of Mrs. Brawner's unanticipated statements. We point out that a different section of the rule, without referring to use during the case in chief, requires all "physical evidence" to be disclosed. URCCC 9.04(C)(2). When either the State or the defense fails to comply, the trial judge must follow the procedures of Rule 9.04 I; he should not just exclude the evidence. We defer consideration of the discovery issues because of a more fundamental defect here.
¶ 14. Even had Feazell complied with the discovery rule and had the trial court found the tape to be properly authenticated, it was still inadmissible. Simply put, the existence of threats allegedly once made by the victim to Feazell were irrelevant *1290 unless self-defense was raised in the case. Instead, the evidence, even from Feazell's former girlfriend, April Walker, was that Feazell started that day's fight. After the soon-to-be victim had walked back to his house across the street with the children, Feazell ran after him and jumped on him. Neither did other trial testimony fairly raise an issue of self-defense. Thus Mr. Brawner's being the aggressor was a non-issue. All the evidence showed that the aggressor was the accused, Feazell. Pre-existing threats by the victim would not have helped the jury resolve any relevant fact question.
¶ 15. Since we find no relevance beyond an attack on the witness's credibility, the use of the tape has to be supported by such rules. The credibility of witnesses may be attacked by cross-examination and by opinion and reputation evidence, but not by an attempt to prove with extrinsic evidence that an answer given by the witness to an extraneous matter was incorrect. M.R.E. 608. The existence of threats, just as any other matter raised with a witness that is irrelevant to the issues of the case, cannot become the subject of a mini-trial. Cross-examination and jury argument are the limit of exploration.
¶ 16. We find no error in excluding the tape.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE TO TWENTY YEARS IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO ALCORN COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.