907 So.2d 972 (2005)
James M. HARRIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02667-COA.
Court of Appeals of Mississippi.
February 22, 2005.
Rehearing Denied May 10, 2005.
Certiorari Denied July 21, 2005.
*974 Dan W. Duggan, Jr., Brandon, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, IRVING and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. James M. Harris was convicted of house burglary by a Rankin County jury. He was sentenced as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections. Aggrieved by the jury's verdict, Harris presents the following issues for review: the trial court committed reversible error in (1) not granting his proffered accomplice instruction, (2) permitting the State to amend the indictment during trial, and (3) allowing prior bad acts into evidence. Harris also contends that the verdict was against the overwhelming weight of the evidence. Finding no reversible error, we affirm Harris's conviction.

FACTS
¶ 2. On the morning of October 15, 2001, James and Sybil White awoke to find an unlocked back door to their home open and their car missing. Sybil testified that her purse and car keys were also missing. She further testified that there were no signs of forced entry and that she did not hear anyone come into the house on the night of the incident. An investigation of the crime led to Harris's arrest and subsequent indictment for burglary.
¶ 3. At trial, Christy Johnston and David Shawn Crabb, convicted felons who were staying with James Harris at the time of the incident, testified on behalf of the State.[1] Johnston testified that she recalled seeing a blue Acura near their house and saw Harris in the vehicle. Johnston further testified that after the incident, Harris stated that he and Timmy Ray Bowling, another man who was staying at the house, "went out somewhere to one of the neighborhoods up north" and saw a house with the garage and carport door open. Johnston testified that Harris stated that he saw a purse on the counter top, went inside the house, and after grabbing the purse and keys, took off in the homeowner's car.
*975 ¶ 4. Similarly, Crabb testified that on the morning of October 15, he saw Harris in a blue newer model Acura. Crabb testified that when he inquired as to where Harris had gotten the Acura, Harris replied that he [Harris] and Bowling had gone into a garage, and then entered the house and took the keys from a lady's purse which was on the bar. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Jury Instruction D-2
¶ 5. Harris first argues that the trial court committed reversible error when it failed to grant his proffered cautionary instruction concerning the testimony of a codefendant. Harris contends that the instruction should have been granted because witnesses Johnston and Crabb were accessories after-the-fact since they both testified that they lived in the same house with Harris, heard a conversation about where the Acura came from, and saw the Acura.
¶ 6. The State, however, contends that Harris's argument concerning this issue is waived for failure to raise it at trial. The State alternatively contends that Harris's argument lacks merit because neither Johnston nor Crabb was indicted as codefendants with Harris in the instant case; thus, there was no evidence to warrant a cautionary instruction regarding an accomplice.
¶ 7. At trial, Harris submitted instruction D-2 which stated that "the court instructs the jury that the testimony of codefendants may be received as evidence against the defendant but it should be viewed with caution." Thereafter, the following exchange occurred between the State and the Defense:
MR. EMFINGER [THE PROSECUTOR]: These people are not codefendants, your Honor.
TOWNSEND [DEFENSE COUNSEL]: Your Honor, they are charged with the same crimes as Mr. Harris, they indicted both of them. Each one of these cases, the one that Christy pled to and the one David Shawn pled to.
MR. EMFINGER: That is true. They're codefendants in the other cases, just not in this one.
THE COURT: First of all, it was submitted as a codefendant instruction. There being no codefendants, it won't be given as drafted. Unless you have anything further to argue, Mr. Townsend, I'm not inclined to give it because there's just
MR. TOWNSEND: We would like the terminology to be changed, Judge, to say convicted felons viewed as evidence but it should be viewed with caution.
THE COURT: I don't think that's the law. Unless you've got a case, I think the jury has the right to take those things into consideration in weighing the evidence. I think it's improper for me to instruct them in that regard. Again, that would be the court commenting on the evidence. So D-2 is going to be refused.
¶ 8. As stated, the State argues that Harris is procedurally barred from raising on appeal the issue of the court's refusal to give the above-quoted instruction. The basis for the State's position is that, at trial, Harris did not object on the grounds that an accomplice's instruction should have been given, choosing instead to submit instruction D-2 which instructs on how to view the testimony of codefendants. The State further points out that Harris even tried to modify his instruction to insert the names of the witnesses in the place of the word, "codefendants."
*976 ¶ 9. We agree with the State's recitation of the record. However, it is clear in the record that Harris never withdrew instruction D-2 and his offer to modify the instruction came after the court expressed reservation about giving the instruction as written. Further, the instruction was never modified, and the court refused instruction D-2 as it was originally submitted by Harris. "[T]he refusal of instructions offered by the defendant need not be objected to in order to preserve the issue for appeal." Green v. State, 884 So.2d 733, 736 (¶ 10) (Miss.2004). Therefore, we decline to hold that Harris is procedurally barred from raising on appeal the refusal of the trial court to grant instruction D-2.
¶ 10. Although we decline to procedurally bar review of the instruction issue, we, nevertheless, find that the trial judge did not err in refusing instruction D-2. The law is clear that "a defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Ladnier v. State, 878 So.2d 926, 931 (¶ 20) (Miss.2004) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). Here, there is no evidence in the record to support a codefendant or accomplice jury instruction. Neither Crabb nor Johnston was indicted with Harris as codefendants in the present case; therefore, the trial judge was under no obligation to grant Harris's proffered instruction. Thus, this argument is without merit.

(2) Prior Bad Acts
¶ 11. Harris next argues that the trial court committed reversible error in allowing a number of prior bad acts to come into evidence against him. Harris specifically challenges Johnston's testimony concerning the stolen car and his [Harris's] participation in a "deal." Harris also challenges Crabb's testimony that he [Harris] put a pistol to Timmy Ray Bowling's head. Harris maintains that the introduction of this evidence prevented him from receiving a fair trial.
¶ 12. "The relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused." Parker v. State, 606 So.2d 1132, 1136 (Miss.1992) (quoting Johnston v. State, 567 So.2d 237, 238 (Miss.1990)). "[This] discretion must [however] be exercised within the boundaries of the Mississippi Rules of Evidence." Id.
¶ 13. On direct examination, the following exchange occurred between Johnston and the State:
Q: Do you recall seeing a blue Acura in the Cedar Lane area?
A: Yes, sir.
Q: Can you tell the ladies and gentlemen of the jury the circumstances under which you first saw that vehicle?
A: That day I had been gone and I had come back, and James Harris was with David Shawn Crabb, I believe his last name is, and they had come back. They had come inside and they were talking about  James Harris was talking about some deal he had just done that day. And we were all just like what are you talking about? And they were talking about 
(MR. TOWNSEND): Your Honor, we would object and ask the jury be excused.
¶ 14. During a hearing outside the presence of the jury, the judge overruled Harris's objection to Johnston's testimony *977 concerning the stolen vehicle and stated in pertinent part: "I think evidence that a car was taken is a part of the proof of a house burglary in this instance. If this witness can place the defendant in that vehicle, the State ought to be able to elicit that testimony."
¶ 15. We find that the trial judge did not abuse his discretion in allowing Johnston's testimony because the witness's testimony was essential to the State's presentation of a complete and coherent story to the jury. Although "`[e]vidence of a prior criminal activity on the part of one criminally accused is inadmissable where the prior offense has not resulted in a conviction, [our supreme court has nevertheless] held that the State has a legitimate interest in telling a rational and coherent story of what happened.'" Levy v. State, 724 So.2d 405, 408 (¶ 12) Miss.1998 (quoting Brown v. State, 483 So.2d 328, 330 (Miss.1986)). Thus, "`[w]here substantially necessary to present to the jury the `complete story of the crime,' evidence or testimony may be given though it may reveal or suggest other crimes.'" Id. Since the vehicle was stolen during the commission of the burglary of the house, the admission of testimony about the stolen car was necessary for the jury to get a full and complete picture of the facts. Therefore, Harris's argument on this issue fails.
¶ 16. Further, Harris's argument that the trial court erred in allowing Johnston's testimony that "Harris was talking about some deal he had just done that day" is similarly without merit. The record reveals that outside the presence of the jury, Harris raised the following objection to Johnston's testimony:
MR. ELLIOT [DEFENSE COUNSEL]: The witness had used the term deal, and she didn't finish the sentence. When I spoke to Ms. Johnston, she advised a lot of drug deals that went on in this particular house. I just wanted to make sure she wasn't going to talk about that drug deal. I understand she's going to talk about that Acura and stuff like that.
MR. EMFINGER: When we start back, your Honor, I will rephrase my question and address that in my question.
¶ 17. Although the record is unclear as to whether the defense or the State made an attempt to clarify what Johnston meant by the term "deal," we fail to see how Johnston's testimony was prejudicial to Harris's case. Without demonstrating how he was prejudiced, Harris simply alleges that Johnston's testimony prevented him from receiving a fair trial. Beyond this assertion, Harris offers no proof that he was prejudiced. The law is well settled that "[a]ssertions of error without prejudice do not trigger reversal." Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 751 (Miss.1996) (citing Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993)).
¶ 18. We next consider Harris's challenge to Crabb's testimony that Harris put a pistol to Bowling's head and forced him [Bowling] to go into the victim's house with him during the commission of the crime. A review of the record reveals that Harris did not object to Crabb's testimony that Harris put a pistol to Bowling's head and made Bowling go into the house with him. Therefore, Harris is procedurally barred from raising this issue for the first time on appeal. Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983).

(3) Amendment of the Indictment
¶ 19. This issue concerns the State's amendment of the indictment to add the name of the co-owner of the burglarized house. Harris contends that the *978 trial court should not have allowed this amendment because the change was one of substance, and not one of form.
¶ 20. The State counters that the amendment to the indictment was one of form and not one of substance and that Harris was not prejudiced by the modification of the indictment.
¶ 21. During trial, the State made the following motion to amend the indictment:
The state would now move to amend the indictment by interlineating [sic] as to the owner of the dwelling of the house, where it says "Break and enter the dwelling house of another, James T. White." And I would move to amend that to include, "And Sybil F. White," to conform to the proof, your Honor.
The trial court granted the amendment, finding that it was one of form and that the defendant was not unfairly surprised as a result of adding an additional name.
¶ 22. We agree with the trial judge's ruling. The law is well settled that "an indictment may not be amended to change the nature of the charge, except by action of the grand jury which returned the indictment." Greenlee v. State, 725 So.2d 816, 821 (¶ 10) (Miss.1998) (citing Akins v. State, 493 So.2d 1321, 1322 (Miss. 1986)). "However, it is permissible to amend an indictment if the amendment is one of form and not of substance." Id. (citing Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994)). "[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood [,] or materially alter [sic] a defense to the indictment as it originally stood so as to prejudice the defendant's case." Id. at 822 (¶ 10) (citing Wilson v. State, 574 So.2d 1324, 1333 (Miss.1990)). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." Id. (citing Griffin v. State, 584 So.2d 1274, 1276 (Miss.1991)).
¶ 23. Here, the State's amendment of the indictment resulted in no change to the identity of the property which was the subject of the burglary offense; it simply added an additional owner. Thus, the amendment of the indictment did not change the substance of the offense charged, nor did it compromise Harris's ability to present a defense. The trial judge was satisfied that Harris was not unfairly surprised or prejudiced by the amendment, and so are we. This issue lacks merit.

(4) Weight of Evidence
¶ 24. Finally, Harris contends that the verdict of the jury was against the overwhelming weight of the evidence.
¶ 25. Our standard of review for claims that a conviction is against the overwhelming weight of the evidence or that the trial court erred in not granting a motion for a new trial has been stated as follows:
[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
Todd v. State, 806 So.2d 1086, 1090 (¶ 11) (Miss.2001) (quoting Crawford v. State, 754 So.2d 1211, 1222 (Miss.2000)).
¶ 26. The State presented evidence to the jury that included not only the testimony of the victim, but also the testimony of witnesses Johnston and Crabb who testified to Harris's involvement in the crime. The State also presented the testimony of *979 Officer David Ruth, the officer directly involved in the investigation, who testified that he saw the victim's car near the house where Harris was staying. Officer Ruth also testified that he set up surveillance across the street from Harris's house, and a young white male, whom police later identified as Bowling, Harris's accomplice, was seen driving the stolen vehicle. Therefore, considering the evidence presented by the State in support of Harris's conviction, and its substantial weight against him, we are not persuaded that the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction an unconscionable injustice.
¶ 27. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING HOUSE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
KING, C.J., BRIDGES AND LEE, P. JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] At the time of the crime, Harris, Johnston, Crabb, and several other individuals were staying in a house in a neighborhood known as Cedar Lane.