# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-EC-00469-SCT

*CEOLA JAMES*

*v.*

*LATRICE WESTBROOKS*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2018 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CEOLA JAMES (PRO SE) |
| ATTORNEY FOR APPELLEE: | WILLIE GRIFFIN |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: DISMISSED - 04/25/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Former Court of Appeals Judge Ceola James lost the 2016 election for the Court of Appeals by nearly twenty-two thousand votes.  James filed an election contest against the winner, Judge Latrice Westbrooks.[1]  James alleged Westbrooks improperly affiliated with the Democratic Party and improperly aligned herself with a political candidate, Representative Bennie Thompson of Mississippi's Second United States Congressional District.  James argued that she received all of the "legal" votes due to Westbrooks's alleged

---

[1] Judge Latrice Westbrooks was sworn in and assumed her present position as Court of Appeals Judge for District 2, Position 2, on January 3, 2017.

violations of election law and pleaded that she is entitled to hold the judicial post won by Westbrooks.

¶2.     Westbrooks filed a motion for summary judgment. At the hearing on Westbrooks's motion, the trial court found that James had failed to submit proof that Westbrooks had improperly aligned her campaign with a political candidate or political party and granted summary judgment in favor of Westbrooks. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     James and Judge Westbrooks were both candidates for the position of judge on the Mississippi Court of Appeals, District 2, Position 2, in the November 2016 general election. Westbrooks defeated James, receiving 92,359 votes (56.74 percent). James received 70,428 votes (43.26 percent). James filed a petition to contest the election in Warren County Circuit Court against Westbrooks and Representative Thompson, alleging that Westbrooks improperly aligned her campaign with Thompson's campaign, contrary to Mississippi Code Sections 23-15-973 and 23-15-976. Specifically, James alleged that Westbrooks

1.     Purposely placed a picture of herself and Thompson on her campaign card;

2.     Attended a 2016 Democratic party meeting, at which Thompson introduced her as his friend running for the Court of Appeals;

3.     Appeared with Thompson at the 2016 Domestic Violence Parade in Yazoo City, at which Thompson introduced her as a candidate for the Court of Appeals;

4.     Placed her campaign signs with Thompson's campaign signs;

5.     Consented to a fundraiser in her honor at which Thompson was listed on the invitation as the "special guest";

2

6.  Consented to a "Sample Official Democratic Election Ballot" that was distributed with her permission; and

7.  Posted, or allowed to be posted, photos of her and Thompson on social media during the general election.

James alleged that these activities violated Mississippi Code Sections 23-15-973 and 23-15-976 and caused voters to align Westbrooks's campaign with the Democratic Party and with Representative Thompson's campaign.

¶4.  Section 23-15-973 provides the following:

It shall be the duty of the judges of the circuit court to give a reasonable time and opportunity to the candidates for the office of judge of the Supreme Court, judges of the Court of Appeals, circuit judge and chancellor to address the people during court terms.  In order to give further and every possible emphasis to the fact that the said judicial offices are not political but are to be held without favor and with absolute impartiality as to all persons, and because of the jurisdiction conferred upon the courts by this chapter, the judges thereof should be as far removed as possible from any political affiliations or obligations.  It shall be unlawful for any candidate for any of the offices mentioned in this section to align himself with any candidate or candidates for any other office or with any political faction or any political party at any time during any primary or general election campaign.  Likewise it shall be unlawful for any candidate for any other office nominated or to be nominated at any primary election, wherein any candidate for any of the judicial offices in this section mentioned, is or are to be nominated, to align himself with any one or more of the candidates for said offices or to take any part whatever in any nomination for any one or more of said judicial offices, except to cast his individual vote.  Any candidate for any office, whether nominated with or without opposition, at any primary wherein a candidate for any one of the judicial offices herein mentioned is to be nominated who shall deliberately, knowingly and willfully violate the provisions of this section shall forfeit his nomination, or if elected at the following general election by virtue of said nomination, his election shall be void.

Miss. Code Ann. § 23-15-973 (Rev. 2018).  Similarly, Mississippi Code Section 23-15-976 provides that "[a] judicial office is a nonpartisan office and a candidate for election thereto

3

is prohibited from campaigning or qualifying for such an office based on party affiliation.

. . ." Miss. Code Ann. 23-15-976 (Rev. 2018).

¶5.     James requested that the trial court void the 2016 election and declare James to be the winner under Mississippi Code Section 23-15-973.  Alternatively, James requested that the trial court order a new election and disqualify Westbrooks from running, due to her improper alignment with Thompson. James also requested attorneys' fees and damages from Thompson.[2]

¶6.     Multiple sample ballots were attached as exhibits to James's petition. The first two sample ballots were identical, save for the named county (one from Sunflower County and the other from Warren County).  Both ballots were entitled "SAMPLE OFFICIAL DEMOCRATIC ELECTION BALLOT" for the general election on Tuesday, November 8, 2016. Four candidates were named alongside their photos, with the bubble next to their name darkened.  The first candidate listed was Hillary Clinton for United States president.  Above her name was the word "DEMOCRAT."  The second candidate listed was Thompson for the United States House of Representatives.  Above Thompson's name was the word "DEMOCRAT."  The third candidate was Jim Kitchens for Supreme Court.  Above Justice Kitchens's name read, "NONPARTISAN JUDICIAL ELECTION."  The fourth candidate listed was Westbrooks for Court of Appeals, which also read, "NONPARTISAN JUDICIAL ELECTION."  Both sample ballots were "Paid For By Friends of Bennie Thompson."  James also attached sample ballots from the 2008, 2010, and 2012 general elections that were "Paid

_____

[2] The trial court docket reflects that Representative Thompson filed a motion to dismiss with prejudice.  He was dismissed voluntarily as a party to this action.

4

For By Friends of Bennie Thompson" and one "Official General Election Ballot" from Warren County.

¶7. Westbrooks filed an answer and affirmative defenses to James's second amended petition. Westbrooks then filed a motion to dismiss, or in the alternative, a motion for summary judgment. Westbrooks argued that James failed to state a claim under Mississippi Code Section 23-15-951, because James had failed to allege that she received a majority of the "legal" votes cast at the election.

¶8. Mississippi Code Section 23-15-951 provides,

> Except as otherwise provided by Section 23-15-955 or 23-15-961, a person desiring to contest the election of another person returned as elected to any office within any county, may, within twenty (20) days after the election, file a petition in the office of the clerk of the circuit court of the county, setting forth the grounds upon which the election is contested.
>
> . . . .
>
> The court shall, at the first term, cause an issue to be made up and tried by a jury, and the verdict of the jury shall find the person having the greatest number of legal votes at the election. . . .

Miss. Code Ann. § 23-15-951 (Rev. 2018).

¶9. James made one claim and one request for relief under this statute: (1) that the Warren County Circuit Court had jurisdiction to hear her petition; and (2) that the circuit clerk of Warren County was to serve a copy of the petition on the respondents. The record on appeal reflects that James did not request a jury trial under this statute or any other statute. Rather, James requested relief solely under Mississippi Code Section 23-15-973, *i.e.*, that the election of Westbrooks be declared void.

5

¶10. Next, Westbrooks argued that James failed to state a claim under Section 23-15-976, for James failed to present any evidence or to allege any facts that Westbrooks campaigned or qualified for judicial office based on political party affiliation. Westbrooks also argued that James failed to state a claim upon which relief could be granted under Section 23-15-973. Specifically, Westbrooks argued that the use of a sample ballot is authorized by the commentary to Canon 5A(1) of the Code of Judicial Conduct, which states that "a candidate does not publicly endorse another candidate for public office by having that candidate's name on the same ticket." Further, Westbrooks argued that any violation of the statute by a non-judicial candidate was beyond the scope of Section 23-15-973. Although Westbrooks argued that Sections 23-15-973 and 23-15-976 are unconstitutional, she did not provide notice to the attorney general as required under Mississippi Rule of Civil Procedure 24(d).

¶11. James responded to Westbrooks's motion to dismiss, or in the alternative, summary judgment. In addition to the sample ballots attached to her second amended petition, James attached three affidavits. The first was her own affidavit, which stated the following: "I, Ceola James, do hereby state that the attached ballot is a true and correct copy of the ballot that was used to work the polls in Drew, MS on election day of November 8, 2016. It was personally handed to me." The sample ballot was the same ballot discussed above in Paragraph 6. The second affidavit was completed by Roosevelt Holly, which reads, "I found this flyer on my [t]ruck [d]ays before the [e]lection[.] [T]here were [sic] one on ever [sic] vehicle at Mt. Heroden Church [ ] Vicksburg, MS. I [r]ead it when I got home[.] As [a]n [a]vid voter I knew it was not [r]ight, so I saved it." The same sample ballot was attached.

6

The third affidavit, completed by Margaret G. Segrest, also attached the same sample ballot and read as follows: "The [b]allot [a]ttached to this [a]ffidavit was given to me at the Church of Greater Grove M.B. Church on Sunday before the election in 2016. This is a true copy of [the] [b]allot that was given to me."

¶12. Additionally, James attached an invitation to a reception for Westbrooks, "Candidate for Mississippi Court of Appeals," held on Thursday, October 27, 2016, with Thompson identified as a "special guest." The event was hosted by three attorneys and stated that the minimum contribution for the event was $250, with checks payable to the Latrice Westbrooks Campaign.

¶13. James then filed a second response to Westbrooks's motion, attaching five exhibits: (1) Westbrooks's memorandum in support of her motion to dismiss, or in the alternative, summary judgment; (2) an opinion issued by the Special Committee on Judicial Campaign Intervention ("Committee"); (3) a public statement issued by the Committee; (4) Westbrooks's responses to James's Request for Admissions; and (5) Westbrooks's answers to James's first set of interrogatories.

¶14. The Committee opinion addressed a leaflet that had been distributed in a circuit judge election, which stated that the Tea Party of Mississippi endorsed a circuit judge candidate. The Committee opined that the candidate had approved the leaflet. The Committee found that the candidate had aligned himself with a political faction or party in violation of Mississippi Code Section 23-15-973 and had campaigned for judicial office based on party affiliation in violation of Section 23-15-976. Likewise, the Committee's public statement

explained that print material circulated by an organization called South Forward IE PAC supporting a candidate for Hinds County circuit judge had improperly aligned the candidate for circuit judge with a candidate for another political office. However, the statement did not describe the print material at issue.

¶15. A hearing was held on Westbrooks's motion for summary judgment. According to James, the hearing occurred on September 8, 2017; however, no transcript of a hearing is in the record furnished to this Court, nor is a hearing referenced on the trial court's docket. On March 21, 2018, Special Judge Stephen Simpson granted Westbrooks's motion for summary judgment and dismissed James's petition with prejudice. In his findings of fact and conclusions of law, Judge Simpson found, *inter alia*, that

> James' response and memorandum brief constitute nothing more than denials. James offered no evidence that this Court may examine and conclude that a genuine issue of mat[erial] fact exists to warrant a trial. Further, although she is a former judge and practicing attorney, this Court gave James the benefit of the doubt normally reserved for *pro se* litigants. During the hearing, this Court specifically questioned James to determine whether facts exist to support her claims. Based on her responses to the Court's questions, the Court finds that there are no facts to support James' claims of improper alignment in violation of Miss. Code Ann. § 23-15-973 or party affiliation in violation of Miss. Code Ann. § 23-15-976.

¶16. James filed a notice of appeal. Westbrooks also filed a notice of cross-appeal, stating the trial court erred in (1) denying her motion to dismiss and for imposition of other sanctions; and (2) declining to consider that part of the motion for summary judgment challenging the constitutionality of Mississippi Code Sections 23-15-973 and 23-15-976. This Court granted Westbrooks's motion to file an out-of-time brief. Westbrooks's brief does not address her first issue. Therefore, we consider the issue abandoned. As to

8

Westbrooks's second claim, the attorney general was not provided a copy of her brief as required by Mississippi Rule of Appellate Procedure 44. The issue is therefore procedurally barred. *Miss. Dep't of Revenue v. AT&T Corp.*, 202 So. 3d 1207, 1209 n.1 (Miss. 2016) ("Failure to serve a copy of the appellate brief on the Attorney General of the State of Mississippi results in application of a procedural bar." (citing *Virk v. Miss. Dep't of Revenue*, 133 So. 3d 809, 814-15 (Miss. 2014))). Further, "[t]he constitutionality of a statute will not be determined unless absolutely necessary to determine the merits of the litigation in which the constitutional issue has been presented." *In re Adoption of D.D.H.*, No. 2016-CA-01530-SCT, 2018 WL 372381, at *2 (Miss. Jan. 11, 2018) (quoting *Roberts v. Miss. State Highway Comm'n*, 309 So. 2d 156, 160 (Miss. 1975)). An examination of the constitutionality of the statutes is not "absolutely necessary" to resolve this appeal.

## ISSUE

¶17. The sole issue before the Court is whether the trial court erred in granting Westbrooks's motion for summary judgment.

## STANDARD OF REVIEW

¶18. "Summary judgment is an appropriate procedural device capable of being utilized in election disputes." *Rush v. Ivy*, 853 So. 2d 1226, 1229 (Miss. 2003) (citing *Lewis v. Griffith*, 664 So. 2d 177, 187-88 (Miss. 1995)). "This Court applies a de novo standard of review on appeal from a grant of summary judgment by the trial court." *Rush*, 853 So. 2d at 1229 (citing *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001)).

## DISCUSSION

9

¶19. On appeal, James fails to cite a single election contest case in her briefs. She cites Mississippi Code Sections 23-15-973 and 23-15-976. Neither statute has been examined by this Court. James also cites a judgment from the United States District Court for the Southern District of Mississippi, finding Section 23-15-976 to be unconstitutional, save for the first sentence of the statute. *Miss. Republican Party State Exec. Comm. v. Musgrove*, Civ. No. 3:02CV1578WS (S.D. Miss. Oct. 21, 2002).[3] James argues that the evidence produced to the trial court created a genuine issue of material fact to defeat Westbrooks's motion for summary judgment.

¶20. James failed to submit proof to support her allegations that: (1) Westbrooks included a photo of her and Thompson on her campaign card;[4] (2) Westbrooks attended a 2016 Democratic party meeting,[5] at which Thompson introduced her as his friend running for the Court of Appeals; (3) Westbrooks appeared with Thompson at the 2016 Domestic Violence Parade in Yazoo City, at which Thompson introduced her as a candidate for the Court of

---

[3] James cited the *Musgrove* judgment in response to Westbrooks's argument that the statutes at issue are unconstitutional. *Musgrove* holds that Section 23-15-976 is unconstitutional to the extent that it prohibits political parties from endorsing judicial candidates. In this case, James does not allege that a political party improperly endorsed a judicial candidate. Thus, *Musgrove* is inapplicable.

[4] James submitted two photos of Westbrooks and Thompson to the trial court, and they are a part of the record. However, James did not submit the campaign card about which she complains.

[5] Even if James sufficiently had proved Westbrooks's attendance, the commentary to Canon 5C(1) of the Mississippi Code of Judicial Conduct provides that "[a]ttending or speaking at a political party gathering in the judge's own behalf while a candidate does not constitute alignments or affiliation with the party sponsoring the gathering." Miss. Code of Jud. Conduct, Canon 5C(1) cmt.

10

Appeals; (4) Westbrooks placed her campaign signs with Thompson's campaign signs; and

(5) Westbrooks posted, or allowed to be posted, photos of her and Thompson on social media

during the general election.[6]

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

***Massey v. Tingle***, 867 So. 2d 235, 238 (Miss. 2004) (quoting Miss. R. Civ. P. 56(e)).

Because James failed to submit proof to support the above allegations, the trial court did not

err in granting summary judgment on those grounds. We discuss James's remaining claims

individually.

>    I.    *Westbrooks consented to a "Sample Official Democratic Election Ballot" that was distributed with her permission*

¶21.    The bulk of James's challenge concerns the sample ballots that were distributed by

"Friends of Bennie Thompson." James submitted three affidavits, swearing that the sample

ballots had been personally received on or near election day. James argues that, although the

commentary to Canon 5A(1) of the Mississippi Code of Judicial Conduct states that "[a]

candidate does not publicly endorse another candidate for public office by having that

candidate's name on the same ticket," it also states that Mississippi Code Section 23-15-973

"imposes restrictions on candidates and political organizations to assure the non-partisan

---

[6] James did not submit a social-media posting to the trial court.

11

quality of judicial elections for Supreme Court, Court of Appeals, Chancery Court, Circuit Court, and County Court justices and judges."

¶22. The "Sample Official Democratic Election" ballots that James produced to the trial court clearly and emphatically identify the document as a "Democratic" ballot, which included names and photos of select judicial candidates with the bubble next to their name darkened. However, James has not offered proof that Westbrooks was responsible for printing and circulating the material.

¶23. According to the proof submitted, the "Friends of Bennie Thompson" created and distributed these sample democratic ballots—not Westbrooks. Indeed, in Westbrooks's responses to James's first set of interrogatories, Westbrooks stated that she "ha[d] no personal knowledge or information of any illegal ballots being distributed within the counties of the second district for the Mississippi Court of Appeals." Westbrooks refuted James's claim that she requested or instructed the "Friends of Bennie Thompson" to place her name on the sample democratic ballots of which James complains. The only evidence before the trial court was the sample democratic ballots, which indicate that the group responsible for the ballots was "Friends of Bennie Thompson."

¶24. The facts James has presented are distinguishable from those in the opinion issued by the Special Committee on Judicial Campaign Intervention, in which the Committee found that a leaflet had been *approved* by a judicial candidate as printed. Here, James failed to produce any evidence that Westbrooks previewed and approved the "Sample Official Democratic Election Ballot." We therefore discern no violation by Westbrooks.

12

*II.* *Westbrooks consented to a fundraiser in her honor, and Thompson was listed on the invitation as the "special guest"*

¶25.   The only evidence presented to the trial court in support of this allegation was a copy of the invitation itself.  James did not present any evidence that Thompson's participation in the event "aligned" Westbrooks's campaign with Thompson's campaign.  *Align*, Webster's II New College Dictionary ("[t]o  ally (e.g., oneself) with one side of a dispute or cause . . . .")  Further, James did not present any evidence that Thompson's appearance as a guest at this event improperly affiliated Westbrooks with any political party.  No mention of any political party appears on the invitation.

¶26.   When determining whether a new election is the appropriate remedy, as requested by James in this case, this Court has stated,

> The key in deciding whether an act not in strict compliance with the statutory election procedures renders that election void is whether the act is such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain.

*Harpole v. Kemper Cty. Democratic Exec. Comm.*, 908 So. 2d 129, 137 (Miss. 2005) (quoting *Riley v. Clayton*, 441 So. 2d 1322, 1328 (Miss. 1983)).  *See also Ulmer v. Currie*, 147 So. 2d 286 (Miss. 1962); *Sinclair v. Fortenberry*, 56 So. 2d 697 (Miss. 1952); and *Gregory v. Sanders*, 15 So. 2d 432 (Miss. 1943).  "When reviewing election contests, our courts regard the imposition of a new election as a last resort and seek to avoid exacting it as a remedy, if at all possible."  *Harpole*, 908 So. 2d at 137.  "Our precedent is quite clear in this regard, and the key consideration in making this decision is whether there is such a

radical departure from our election laws so as to require a special election or that alleged illegal votes are attended by fraud or willful violations of election law." *Id.*

¶27. James has failed to demonstrate a "radical departure" from election law such that the will of the electors is "impossible to ascertain." *Id.* Indeed, James lost the election to Westbrooks by nearly twenty-two thousand votes, and, as the trial court noted, James did not identify a single illegal ballot from the election.

## CONCLUSION

¶28. Based on the lack of proof presented to the trial court, we find that the trial court correctly granted summary judgment in favor of Westbrooks.

¶29. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: DISMISSED.**

**KITCHENS, P.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. KING, P.J., MAXWELL, ISHEE AND GRIFFIS, JJ., NOT PARTICIPATING.**

14