# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-00458-SCT

*CEOLA JAMES*

*v.*

*BENNIE THOMPSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2021 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| TRIAL COURT ATTORNEYS: | CEOLA JAMES |
| | JOHN LEONARD WALKER, JR. |
| | KEVIN BRIAN BASS |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CEOLA JAMES (PRO SE) |
| ATTORNEYS FOR APPELLEE: | JOHN LEONARD WALKER, JR. |
| | GLORIA GREEN |
| | KEVIN BRIAN BASS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    In November 2016, Former Judge Ceola James ran for reelection to the Mississippi Court of Appeals against Judge Latrice Westbrooks. During the 2016 election, Congressman Bennie Thompson distributed documents titled, "Sample Official Democratic Election Ballot" with an image of Judge Westbrooks as the candidate for the position she and James were running for on the Mississippi Court of Appeals.  James ultimately lost the election. After the election, James sued Thompson for tortious interference with her election and job.

The Warren County Circuit Court dismissed James's claim on the pleadings with prejudice pursuant to Mississippi Rule of Civil Procedure 12(c). James now appeals and argues: (1) her case should not have been dismissed pursuant to Rule 12(c); and (2) her complaint was "meritorious" and should have been heard by a jury. Upon review of the record, this Court affirms the trial court's dismissal of James's tortious interference claim.

**FACTS**

¶2. James and Judge Westbrooks were opponents in the 2016 election for the position of judge on the Mississippi Court of Appeals. At this time, Thompson was also running for reelection to the United States House of Representatives. During the elections, Thompson distributed documents titled, "Sample Official Democratic Election Ballot," which contained names and photographs of select candidates running for president of the United States, state representative in the United States House of Representatives, Mississippi Supreme Court justice, and Mississippi Court of Appeals judge. Judge Westbrooks's name and image appeared on this "sample ballot" as the candidate for the "nonpartisan judicial election for Court of Appeals . . . District 2, Position2." James's name was not on this "sample ballot." The bottom of the "sample ballot" read, "PAID FOR BY THE FRIENDS OF BENNIE THOMPSON." James ultimately lost the 2016 election.

¶3. After she lost the election, James filed a petition to contest the election in Warren County Circuit Court against Judge Westbrooks. James alleged that Judge Westbrooks "improperly affiliated with the Democratic Party and improperly aligned herself with a political candidate . . . ." *James v. Westbrooks*, 275 So. 3d 62, 63 (Miss. 2019). Judge

2

Westbrooks filed a motion for summary judgment, and the trial court granted the motion, finding that James "failed to submit proof that [Judge] Westbrooks had improperly aligned her campaign with a political candidate or political party." *Id.* On appeal, we affirmed the trial court's grant of summary judgment. *Id.*

¶4. James also filed a complaint against Thompson on August 15, 2017, alleging he tortiously interfered with her election and job. This lawsuit is at issue in the present case. In the complaint, James alleged that on November 8, 2016, Thompson circulated a "false ballot, not authorized by the state election commissioners for the [S]tate of Mississippi, in order to tortiously interfere with [James's] election and job, and with the intention of causing [James] to lose her seat on the Mississippi Court of Appeals." James attached one of Thompson's "sample ballots" that was circulated on November 8, 2016, to her complaint.

¶5. On November 15, 2017, Thompson filed his answer. Thompson argued that James failed to state a claim and requested dismissal under Mississippi Rule of Civil Procedure 12(b)(6). Thompson denied all allegations James raised in her complaint. Thompson also argued that the "sample ballots" were constitutionally protected speech. On December 29, 2017, Thompson filed a motion for judgment on the pleadings. In his motion, Thompson argued that James's complaint should be dismissed pursuant to Mississippi Rule of Civil Procedure 12(c) because James failed to state a claim for tortious interference.

¶6. On January 28, 2021, a hearing was held on Thompson's motion. At the hearing, Thompson's attorney argued that the case should be dismissed because James's claims were wholly based on protected speech. He also argued that James's tortious interference claim

3

should fail because there was no "interest that could be interfered with" since the position of Mississippi Court of Appeals judge is an elected position and not a right. Further, Thompson's attorney argued that James only made "conclusory allegations" and failed to provide any factual basis for the claims in her complaint.

¶7. At the hearing, James stated that she sued Thompson because her "right to run for . . . an election was interfered with by . . . Thompson with a false ballot." James argued that Thompson cannot "create a ballot which represents to the people of the [S]tate of Mississippi that this is a true and correct copy of a sample ballot and that . . . the voters are supposed to rely on that." James also argued that Thompson's not putting her on the "sample ballot" implied that Judge Westbrooks was the only Democrat running for the Court of Appeals position. James continued, stating, "I have a right to run free of a fraudulent ballot or a fake ballot . . . . [B]y Mr. Thompson misleading the voters of the [S]tate of Mississippi, he caused me to lose my seat, and that's what I'm alleging."

¶8. In response, Thompson's attorney stated that the "sample ballot" at issue was not false. He explained that the "sample ballot" contained the names of candidates supported by the Mississippi Democratic Party. Further, Thompson's attorney noted that the sample "sample ballot" made "very clear" that it was "[p]aid for by the friends of Bennie Thompson."

¶9. In its final judgment, the trial court found that the First Amendment of the United States Constitution and article 3, section 13, of the Mississippi Constitution gave Thompson the right to create and distribute a "sample ballot" and to select which candidates he wanted

4

to appear on the "sample ballot." The trial court also found that "[t]he sample ballot created and distributed by Congressman Thompson . . . was not a fraudulent ballot as alleged by [James] . . . . [The] [b]allot clearly states at the top of it that it is a 'Sample Official Democratic Election Ballot,' and at the bottom of it contains the following disclaimer, 'PAID FOR BY FRIENDS OF BENNIE THOMPSON.'"

¶10. James appealed the trial court's decision. On appeal, James argues (1) her case should not have been dismissed pursuant to Rule 12(c)[1]; and (2) her complaint was "meritorious" and should have been heard by a jury. While James raises two issues, her appeal can be succinctly addressed by determining whether the trial court erred by dismissing James's claim for tortious interference. Upon review of the record, this Court affirms the trial court's decision.

## STANDARD OF REVIEW

¶11. Mississippi Rule of Civil Procedure 12(c) states, "After the pleadings are closed . . . any party may move for judgment on the pleadings . . . ." M.R.C.P. 12(c). This Court reviews the grant of a motion for a judgment on the pleadings de novo. ***Huff-Cook, Inc. v. Dale***, 913 So. 2d 988, 990 (Miss. 2005). "Therefore, this Court sits in the same position as did the trial court." ***Id.*** (citing ***Bridges ex rel. Bridges v. Park Place Ent.***, 860 So. 2d 811,

---

[1] Within this argument, James states, "Also critical is the fact that Thompson failed and refused to answer any discovery questions . . . . Thompson is holding himself to be above the law and not accountable to the rules of a court in a judicial proceeding." James cites no case law for this first issue or for her argument pertaining to discovery. Mississippi Rule of Appellate Procedure 28(a)(7) requires appellants to cite relevant authority in their briefs. M.R.A.P. 28(a)(7). A failure to do so will cause that issue to be procedurally barred. *Id.*; ***Cowart v. State***, 178 So. 3d 651, 666 (Miss. 2015). Here, James failed to provide any relevant authority in her brief as to this issue. Therefore, this issue is procedurally barred.

5

813 (Miss. 2003)). When this Court reviews a Rule 12(c) motion, "the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond any reasonable doubt that the non-moving party will be unable to prove any set of facts in support of the claim which would entitle the non-movant to relief." *Id.* (citing *Bridges*, 860 So. 2d at 813).

## DISCUSSION

### 1. The trial court judge did not err by granting Thompson's motion to dismiss.

¶12. On appeal, James argues that she raised a "meritorious complaint that should be heard by the jury." In her complaint, James sued for tortious interference with the election and her job. But Mississippi law does not provide relief.

¶13. Because tortious interference with an election and a job does not exist in this State, James grounds her argument in the tort for interference with business relations. To establish a valid claim for tortious interference with business relations, James needed to show:

> (1) [Thompson's] acts were intentional and willful; (2) [t]he acts were calculated to cause damage to [James] in [her] lawful business; (3) [t]he acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of [Thompson] (which constitutes malice); (4) [a]ctual damage and loss resulted.

*Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 16 (Miss. 2007) (internal quotation mark omitted) (quoting *MBF Corp. v. Century Bus. Commc'ns., Inc.*, 663 So. 2d 595, 598 (Miss. 1995)).

¶14. James's complaint alleges that Thompson's actions were willful and intentional. *See Biglane*, 949 So. 2d at 16. James asserted that Thompson circulated a "false ballot" among

6

voters before the November 2016 election. She also attached that "sample ballot" to her complaint. James failed to allege in her complaint, however, that Thompson's actions "were calculated to cause damage to [James] in [her] lawful business[.]" *Id.* (quoting *MBF Corp.*, 663 So. 2d at 598). Our case law suggests a "lawful business" refers to nursing homes, saloons, and incorporated businesses, to name a few, not an elected position. *See PDN, Inc. v. Loring*, 843 So. 2d 685 (Miss. 2003); *Biglane*, 949 So. 2d 9; *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678 (1987). James did not cite any authority in her complaint or her brief to establish that her running for public office also constituted a lawful business.

¶15.    Additionally, James's complaint fails to allege that Thompson's "acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of [Thompson.]" *Biglane*, 949 So. 2d at 16 (quoting *MBF Corp.*, 663 So. 2d at 598). James alleged in her complaint that the "sample ballots" Thompson distributed were fraudulent. The document that James classifies as a fraudulent "sample ballot" is, in essence, a candidate endorsement list. At the January 28, 2021 hearing, Thompson's attorney explained that the "sample ballot" at issue included names of candidates supported by the Mississippi Democratic Party. The "sample ballots" James attached to her complaint clearly identify the document as a Democratic ballot. These "sample ballots" included names and photos of select candidates with the bubble next to the candidates' names darkened. Additionally, the "sample ballots" were labeled, "PAID FOR BY THE FRIENDS OF BENNIE THOMPSON." The language on the "sample ballots" and the inclusion of select candidates

7

that the Mississippi Democratic Party supported indicate that Thompson's "sample ballots" were actually candidate endorsement lists.

¶16.    Thompson has the right under the First Amendment of the United States Constitution and article 3, section 13, of the Mississippi Constitution to distribute candidate endorsement lists.  *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . ."); Miss. Const. art. 3, § 13 ("The freedom of speech and of the press shall be held sacred . . . ."); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 334–35, 115 S. Ct. 1511, 1513, 131 L. Ed. 2d 426 (1995) ("When a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest."); *Evers v. State*, 241 Miss. 560, 131 So. 2d 653, 658-59 (1961) ("[T]he constitutional guaranties of freedom of speech and of the press" "are not idle and meaningless terms, but significantly philosophical concepts of a constitutional republic and of the intellectual independence of every citizen.").  Thompson's use of candidate endorsement lists during campaigns for public office to promote the election of a favored candidate is core political speech that is constitutionally protected.  Therefore, James has failed to allege that Thompson's actions were done with an unlawful purpose or without right.  *See* ***Biglane***, 949 So. 2d at 16.

¶17.    Taking all the allegations in James's complaint as true, it appears beyond a reasonable doubt that James will not be able to prove any set of facts in support of a tortious interference claim that would entitle her to relief.  *See* ***R.J. Reynolds Tobacco Corp. v. King***, 921 So. 2d 268, 271 (Miss. 2005).  Thompson's conduct was protected under the First Amendment of

the United States Constitution and article 3, section 13, of the Mississippi Constitution.

Therefore, the trial court did not err when it dismissed James's complaint with prejudice.

## CONCLUSION

¶18.    This Court affirms the trial court's decision to dismiss James's case on the pleadings.[2]

¶19.    **AFFIRMED.**

   **RANDOLPH, C.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS AND KING, P.JJ., COLEMAN AND GRIFFIS, JJ., NOT PARTICIPATING.**

---

[2] Thompson filed a motion for sanctions for a frivolous appeal. That motion is denied.